**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Robert PERKINS,**
**Defendant–Appellant.**

No. 05–4798.

United States Court of Appeals,
Fourth Circuit.

Argued: Sept. 21, 2006.

Decided: Nov. 29, 2006.

**ARGUED:** Michael Oliver Hueston, New York, New York, for Appellant. Christopher Chen–Hsin Wang, United States Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C., for Appellee. **ON BRIEF:** Richard H. Rosenberg, New York, New York, for Appellant. Bradley J. Schlozman, Acting Assistant Attorney General, David K. Flynn, United States Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C., for Appellee.

Before WILLIAMS and GREGORY, Circuit Judges, and THOMAS E. JOHNSTON, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge GREGORY and Judge JOHNSTON joined.

## OPINION

WILLIAMS, Circuit Judge:

Michael Perkins, a Petersburg, Virginia city police officer, was convicted by a jury of kicking and causing bodily injury under color of law to Lamont Koonce, a motorist stopped for a traffic violation who fled from the police, thus willfully depriving Koonce of his constitutional right to be free from unreasonable force, a felony[1] under 18 U.S.C.A. § 242 (West 2000). Perkins challenges both the admission of opinion evidence at trial and the sufficiency of the evidence. Finding no reversible error, we affirm.

I.

Shortly before midnight on October 13, 2003, Petersburg police officers Michael

---

1. A violation of § 242 may be charged as a misdemeanor or a felony. *See* 18 U.S.C.A. § 242 (West 2000). If "bodily injury" results from the acts committed in violation of § 242, then the defendant is guilty of a felony. *Id.*

Tweedy and David House observed a car traveling with no headlights on and damage to its front end. The officers, in separate vehicles, followed the car, pulled it over, and approached the driver to issue a warning or ticket for driving at night without lights. After the officers assisted the driver, Lamont Koonce, out of his car, Koonce broke loose from their hold and fled on foot. House and Tweedy gave chase.

During the chase, Koonce leaped over a fence "like a Superman" and fell on his right side. (J.A. at 236.) Koonce quickly gathered himself and kept running until finally, after a lengthy pursuit, Tweedy caught him and forced him face-down onto the ground, with both of his arms pinned beneath his body. At some point, Tweedy also used pepper spray on Koonce.

After Tweedy moved away from Koonce, House approached Koonce's left side to handcuff him. House attempted to remove Koonce's left arm from under his body, but Koonce resisted. When Koonce finally released his left arm, Koonce grabbed House's ankle. House responded by striking Koonce with a closed fist twice on the arm and once in the underarm to try to free his ankle, but Koonce maintained his hold. Tweedy then forcefully stomped on Koonce's head three times. When Koonce continued to resist, Tweedy stomped on his head three more times. After this second round of stomps, Koonce said, "[a]ll right, man, all right," and allowed House to pull his left arm out from under him and place a handcuff on his wrist. (J.A. at 248, 278.)

Tweedy made a radio call stating that he had a subject in custody. Sergeant John Waldron responded by making a radio call for backup. At this point, House believed that he and Tweedy did not need assistance because Koonce's left wrist was in a handcuff. House radioed Sergeant Wal-

dron and told him that the situation was under control. Waldron responded by telling all officers to disregard his earlier call for backup.

Despite this call, Officer Benjamin Fisher responded to Tweedy's earlier call and arrived at the scene soon thereafter. House asked Fisher to help him secure Koonce's right arm. Tweedy then walked over and kicked Koonce two or three times in the side and stomped on Koonce's head three more times.

A few moments later Perkins, an off-duty Petersburg police officer, arrived at the scene. By the time Perkins arrived, both House and Fisher believed that Koonce was under control, as the bloodied, motionless Koonce was lying face-down on the ground and was not "going anywhere." (J.A. at 300, 403.) Without consulting or speaking with any of the officers standing nearby, Perkins immediately ran up to Koonce and delivered a running kick to Koonce's side. Perkins then kicked Koonce a second time, with slightly less force. Immediately after Perkins's second kick, Tweedy stomped on Koonce's head two more times before Perkins grabbed Tweedy and pulled him away from Koonce. Fisher then helped House place a handcuff on Koonce's right wrist.

Koonce sustained a number of life-threatening injuries, including multiple skull fractures, multiple facial fractures, a pneumothorax (puncture) to his right lung, bleeding in and contusions on the brain, and bruising on his left lung. At the time he was admitted to the Southside Regional Medical Center, Koonce was unconscious; he remained so for several hours.

At the hospital, Koonce was tested on the Glasgow coma scale, a clinical scale that assesses impaired consciousness. Koonce received a score of 1 for mental status, indicating that he did not open his

eyes; a score of 1 for verbal response, indicating that he was not speaking; and a score of 3 for motor response, indicating that he moved away in response to pain. Due to the severity of his injuries, the still-unconscious Koonce was transferred to the Medical College of Virginia (MCV) hospital later that night.

On November 16, 2004, a grand jury indicted Perkins.[2] The indictment charged that Perkins, while acting under color of state law, kicked and caused bodily injury to Koonce, thus willfully depriving Koonce of his right to be free from unreasonable force, a felony under 18 U.S.C.A. § 242.[3] The case proceeded to a jury trial.

At trial, Perkins argued that his kicks to Koonce were reasonable under the circumstances. In response to this argument, the Government offered opinion testimony from several officers regarding the reasonableness of Perkins's use of force against Koonce. Of the officers that testified, the Government offered only Inspector Carter Burnett as an expert under Federal Rule of Evidence 702.

Officers House and Fisher—both eyewitnesses to Perkins's kicks to Koonce—testified about their departmental training in defensive tactics and the use of force. Using a use-of-force dummy, they both demonstrated the kicks that they witnessed Perkins deliver to Koonce. The Government asked House whether, based on his experience and his assessment of the situation, he saw "any law enforcement reason for those kicks[.]" (J.A. at 258.) Perkins objected to this question on the ground of "ultimate issue."[4] (J.A. at 259.) The district court overruled the objection, and House answered that he did not see any reason for the kicks.[5] Likewise, in response to the Government's question whether, based on his experience and his assessment of the scene, Perkins's kicks to Koonce were "reasonable," Fisher answered, "No." (J.A. at 376.) Fisher also testified that, in his opinion, the kicks were not necessary and that there were other techniques he was trained to use that would have been appropriate. Perkins did not object to any of Fisher's testimony.

Other officers who had not witnessed Perkins's kicks to Koonce also testified about the reasonableness of the kicks. In response to the Government's question whether it would have been appropriate

---

**2.** Tweedy was charged in the same indictment with a felony violation of 18 U.S.C.A. § 242; he was additionally charged with falsely alleging in a police report that Koonce was combative and that he had used only the force reasonably necessary to subdue Koonce, in violation of 18 U.S.C.A. § 1519 (West 2000). Tweedy pleaded guilty to the § 242 charge and was sentenced by the district court to 108 months' imprisonment.

**3.** To convict Perkins of a felony under § 242, the jury had to find that (1) Perkins deprived Koonce of a right secured by the Constitution or laws of the United States, in this case the Fourth Amendment right to be free from the use of unreasonable force; (2) Perkins acted willfully; (3) Perkins acted under color of law; and (4) Koonce suffered bodily injury as a result of Perkins's conduct. 18 U.S.C.A. § 242.

**4.** While Federal Rule of Evidence 704(a) plainly precludes "ultimate issue" objections, it is clear from the context that Perkins was objecting to the testimony because he thought the question was merely seeking House's opinion as to what verdict the jury should reach.

**5.** Later, the Government asked House whether kicking a suspect was an "appropriate" way to protect one's self from being exposed to the suspect's blood. (J.A. at 301–02.) Perkins objected to the use of the word "appropriate." The court overruled the objection, and House answered in the negative. Perkins makes no mention of this testimony in his evidentiary challenge on appeal. We therefore do not address its admissibility.

for an officer to "deliver a hard kick into the side of [a motionless] individual lying on the ground," Corporal Stan Allen, Perkins's defensive tactics instructor, replied, "[n]ot unless [the individual] was armed with a weapon and w[as] threatening the officer." (J.A. at 571.) Perkins only made a general objection to Allen's testimony that reasonable officers would not disagree with Allen's conclusion that Perkins's kicks were inappropriate. Similarly, Sergeant Philip Jones testified that kicks like those Perkins delivered to Koonce were "not appropriate." (J.A. at 591.) He also testified that reasonable officers would not disagree with his opinion. Sergeant Waldron testified that kicking a motionless person on the ground was not "reasonable" under the General Orders of the Petersburg Police Department. (J.A. at 614.) Perkins did not object to Jones's or Waldron's testimony.

Inspector Burnett, the Government's "force expert," testified regarding the classes he taught in defensive tactics and controlling suspects. Burnett stated that he saw no "legitimate" law enforcement reason for Perkins to kick Koonce. (J.A. at 526.) In response to a number of hypotheticals positing a suspect lying motionless on the ground with one arm in a handcuff, Burnett testified that it was inappropriate for an officer to kick a suspect in that posture. Burnett also testified that reasonable officers would not disagree with his conclusions. Perkins's sole objection was to the Government's use of the term "legitimate" in its question to Burnett.

The Government also introduced expert medical testimony about the cause of Koonce's injuries. Dr. Jamal Farran, Koonce's attending physician at MCV and one of the Government's medical experts, testified that the likely cause of Koonce's punctured right lung and bruised left lung was blunt force trauma. When asked about Koonce's Glasgow coma test, Dr. Farran testified that an individual can react to painful stimuli while unconscious.

Both at the conclusion of the Government's case-in-chief and after the Government rested, Perkins moved for acquittal under Federal Rule of Criminal Procedure 29 on the ground that the Government had failed to show that it was Perkins's kicks, as contrasted with Tweedy's kicks, that caused Koonce "bodily injury" under 18 U.S.C.A. § 242.[6] The court twice denied Perkins's motion, stating that "[u]nder the case law, ... just the kicking alone, the infliction of pain, is a bodily injury." (J.A. at 603.) In its instructions to the jury, the court defined "bodily injury" as a "cut, abrasion, bruise, fracture, or other disfigurement, or mere physical pain, or any other injury to the body ... [even if not] significant, severe or permanent." (J.A. at 685–86.)

On February 17, 2005, after a three-day trial, the jury convicted Perkins of a felony under 18 U.S.C.A. § 242, and he was sentenced to 51 months' imprisonment. Perkins timely noted an appeal. We have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006).

II.

Perkins argues on appeal that the district court erred in admitting expert testimony without a proper foundation, in admitting lay and expert opinion testimony that improperly stated a legal conclusion, and that the evidence was insufficient to prove that Perkins caused "bodily injury" to Koonce. We address each of these arguments in turn.

6. Aside from recalling Sergeant Waldron, Perkins did not call any other witnesses at trial.

■ We typically review for abuse of discretion a district court's evidentiary rulings. *United States v. Gray*, 405 F.3d 227, 238 (4th Cir.2005). When a party fails to object to the admission of evidence, however, we review the admission for plain error. *United States v. Chin*, 83 F.3d 83, 87 (4th Cir.1996). Perkins first contends that the district court erred in admitting without a proper foundation the opinion testimony of Officers House and Fisher, Sergeants Jones and Waldron, and Corporal Allen, none of whom were qualified as expert witnesses. Because Perkins did not object at trial to any of the testimony on this ground, we review for plain error.[7]

Federal Rule of Evidence 701 permits a lay witness to give opinion testimony that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[8] Fed.R.Evid. 701. Because Rule 701 "does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*," Fed.R.Evid. 701 advisory committee's note, the line between lay opinion testimony under Rule 701 and expert testimony under Rule 702 "is a fine one," 3 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, *Federal Rules of Evidence Manual* 701–14

(9th ed.2006). *See also United States v. Ayala–Pizarro*, 407 F.3d, 25, 28 (1st Cir.2005)(noting that "[t]he line between expert testimony under Fed.R.Evid. 702 ... and lay opinion testimony under Fed. R.Evid. 701 ... is not easy to draw")(internal quotation marks omitted). As an example of the kinds of distinctions that Rule 701 makes, the Committee instructs that the rule would permit a lay witness with personal experience to testify that a substance appeared to be blood, but that it would not allow a lay witness to testify that bruising around the eyes is indicative of skull trauma. Fed.R.Evid. 701 advisory committee's note.

As helpful as this example may be to our interpretive cause, the fine line remains. While we have noted that "[a] critical distinction between Rule 701 and Rule 702 testimony is that an expert witness must possess some specialized knowledge or skill or education that is not in possession of the jurors," *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir.2000) (internal quotation marks omitted), we also have acknowledged that the "subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend," *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir.1993). The interpretive waters are muddier still: while lay opinion testimony *must* be based

---

7. Under plain error review, Perkins must show that (1) the district court committed an error; (2) the error was plain; and (3) the error affected his substantial rights, i.e., that the error affected the outcome of the district court's proceedings. *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Hughes*, 401 F.3d 540, 547–48 (4th Cir.2005). Even if Perkins makes this showing, we should only notice the error if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Hughes*, 401 F.3d at 555 (internal quotation marks and citation omitted).

8. Rule 701 was amended in 2000 to include subsection (c). The Advisory Committee's position was that the amendment did not work a sea change to the rule. 3 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, *Federal Rules of Evidence Manual* 701–15 (9th ed.2006). We agree. The amendment "serves more to prohibit the inappropriate admission of expert opinion under Rule 701 than to change the substantive requirements of the admissibility of lay opinion." *United States v. Garcia*, 291 F.3d 127, 139 n. 8 (2d Cir.2002).

on personal knowledge, *see* Fed.R.Evid. 701, "expert opinions may [also] be based on firsthand observation and experience." 29 Charles Wright & Victor Gold, *Federal Practice and Procedure: Evidence* § 6253 (1997 & Supp.2006). At bottom, then, Rule 701 forbids the admission of expert testimony dressed in lay witness clothing, but it "does not interdict all inference drawing by lay witnesses." *United States v. Santos*, 201 F.3d 953, 963 (7th Cir.2000).

Where opinion testimony focuses on the standard of the objectively reasonable officer, "it is more likely that Rule 702's line between common and specialized knowledge has been crossed." *Kopf*, 993 F.2d at 378. In Perkins's case we conclude that the district court, although close to crossing that line, properly admitted the challenged testimony given by Officers House and Fisher. Both officers observed Perkins kick Koonce and thus testified based on their contemporaneous perceptions; as such, their testimony satisfies Rule 701's personal knowledge requirement. *See* Fed.R.Evid. 701. Moreover, their observations were "common enough and require[d] such a limited amount of expertise ... that they can, indeed, be deemed lay witness opinion[s]." *United States v. Von-Willie*, 59 F.3d 922, 929 (9th Cir.1995). Because their testimony was framed in terms of their eyewitness observations and particularized experience as police officers, we have no trouble finding that their opinions were admissible under Rule 701.

■ On the other hand, the "reasonableness" testimony given by Sergeants Waldron and Jones and Corporal Allen crossed the line between Rules 701 and 702. None of those officers observed Perkins's use of force on Koonce. Their opinions that Perkins's use of force was inappropriate were elicited in response to hypothetical questions based on secondhand accounts, making their testimony similar, if not indistinguishable, from the properly qualified *expert* testimony admitted at Perkins's trial and admitted in other excessive force cases. *See, e.g., United States v. Mohr*, 318 F.3d 613, 623–24 (4th Cir.2003)(admitting *expert* testimony on the reasonableness of the defendant's use of force when the expert did not observe the defendant's actions but instead gave his opinion in response to abstract questions). Such opinion testimony does not satisfy Rule 701's personal knowledge requirement. *See United States v. Glenn*, 312 F.3d 58, 67 (2d Cir.2002)(drug dealer's testimony that the defendant must have been carrying a gun was erroneously admitted under Rule 701 because the witness lacked first-hand knowledge); *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir.1993)("Under the Federal Rules of Evidence, speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible."). Accordingly, the district court erred in admitting Jones's, Waldron's, and Allen's opinion testimony without a proper foundation.

■ Nevertheless, we are confident that this error did not affect the outcome of Perkins's trial. Sergeant Jones's brief "reasonableness" testimony came on the heels of his clearly admissible and extensive testimony about a conversation he had with Perkins during which Perkins admitted to kicking Koonce and demonstrated for Jones how he had kicked him. Furthermore, both Sergeant Waldron, who recounted that his fourteen years of experience included time as a training officer, corporal, and sergeant, and Corporal Allen, whose experience and training was enough to cause the district court to assume his expert status, could have been offered as expert police witnesses in the

first instance.[9]  *See Kopf,* 993 F.2d at 376 (a "witness' qualifications to render an expert opinion are ... liberally judged by Rule 702"); *United States v. Figueroa–Lopez,* 125 F.3d 1241, 1246–47 (9th Cir.1997)(holding that, although it was error for the district court to admit opinion testimony under 701, the error was harmless because the witnesses could have been qualified as experts under 702).  Therefore, under plain error review, Perkins's challenge fails.

## III.

■ Perkins also argues that the district court erred in admitting both expert and non-expert testimony regarding the reasonableness of Perkins's use of force because such testimony impermissibly stated a legal conclusion.  During House's testimony, Perkins objected on the ground that the testimony went to the "ultimate issue" of the reasonableness of Perkins's use of force.  Likewise, during Inspector Burnett's testimony, Perkins objected to the Government's question asking whether Burnett saw any "legitimate" reason for Perkins's kicks.  Therefore, we review the admission of the challenged portions of House's and Burnett's testimony for abuse of discretion.  We review the admission of all other opinion testimony about the reasonableness of Perkins's kicks for plain error.[10]

Federal Rule of Evidence 704(a) provides that, with exceptions not relevant here, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Although this rule officially abolished the so-called "ultimate issue" rule, *see* Fed.R.Evid. 704 advisory committee's notes, it did not lower the bar "so as to admit all opinions."  *Id.* Testimony on ultimate issues still "must be otherwise admissible under the Rules of Evidence."  *Weinstein's Federal Evidence* § 704.03[1] (2d ed.2002).  This means that the testimony must be helpful to the trier of fact, in accordance with Rules 701 and 702, and must not waste time, in accordance with Rule 403.  "These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day."  *United States v. Barile,* 286 F.3d 749, 759–60 (4th Cir.2002)(quoting Fed.R.Evid. 704 advisory committee's notes).  The touchstone of admissibility of testimony that goes to the ultimate issue, then, is helpfulness to the jury.  *Kopf,* 993 F.2d at 377–78 (stating that while "[a]n opinion is not objectionable simply because it embraces an

---

9.  We note that we are not concerned that our holding will encourage parties to ignore the disclosure requirements of Federal Rule of Criminal Procedure 16 and the foundation requirements of Rule 702 when offering an expert witness.  Unless parties are enlivened by the prospects of potential Rule 701/702 challenges to the opinion testimony that they elicited at trial, they will continue to "play by the rules" in offering experts.  Moreover, district courts are not free to misapply federal rules simply because courts sitting in review may find these misapplications harmless.

10.  Perkins made a general objection during Corporal Allen's testimony.  The reason for the objection is not clear from its context.  *See* Fed.R.Evid. 103(a)(1) (a timely objection must "stat[e] the specific ground of objection, if the specific ground was not apparent from the context").  Such failure to specify is typically fatal to the objection on appeal.  *See United States v. Parodi,* 703 F.2d 768, 783 (4th Cir.1983)("[T]he objecting party [must] object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection ....")(internal quotation marks omitted).  Accordingly, we review the admissibility of Allen's testimony for plain error.

ultimate issue to be decided by the trier of fact, ... such an opinion may be excluded if it is not helpful to the trier of fact")(internal quotation marks omitted); *Weinstein's Federal Evidence* § 704.04[2][a]("The most common reason for excluding opinion testimony that gives a legal conclusion is lack of helpfulness ....."). Thus, the district court's task "is to distinguish [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion," a task that we have acknowledged "is not an easy one." *Barile,* 286 F.3d at 760.

We have stated that "[t]he best way to determine whether opinion testimony [is unhelpful because it merely states] legal conclusions, 'is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.' " *Id.* (quoting *Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir.1985)). The district court should first consider whether the question tracks the language of the legal principle at issue or of the applicable statute; then, the court should consider whether any terms employed have a specialized legal meaning. *Barile,* 286 F.3d at 760.

To state the general rule, however, "is not to decide the far more complicated and measured question of when there is a transgression of the rule." *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 99 (1st Cir.1997). The rule makes ultra-fine distinctions, with admissibility often turning on word choice: the question "Did T have capacity to make a will?" impermissibly asks for a legal conclusion, while the question "Did T have sufficient mental capacity

to know the nature and extent of his property?" does not. Fed.R.Evid. 704 advisory committee's notes.

On the one hand, conclusory testimony that a company engaged in "discrimination," that a landlord was "negligent," or that an investment house engaged in a "fraudulent and manipulative scheme" involves the use of terms with considerable legal baggage; such testimony nearly always invades the province of the jury.[11] *See, e.g., Andrews v. Metro N. Commuter R.R. Co.,* 882 F.2d 705, 709–10 (2d Cir.1989)(testimony that defendant was "negligent" stated a legal conclusion); *United States v. Scop,* 846 F.2d 135, 140 (2d Cir.1988)(testimony that defendants had engaged in a "fraudulent and manipulative scheme" stated a legal conclusion); *Torres,* 758 F.2d at 151 (testimony that county engaged in "discrimination" violated Rule 704). On the other hand, the legal meaning of some terms is not so distinctive from the colloquial meaning, if a distinction exists at all, making it difficult to gauge the helpfulness, and thus admissibility, of the testimony under Rule 704. *See, e.g., United States v. Sheffey,* 57 F.3d 1419, 1426 (6th Cir.1995)(testimony that the defendant had driven "recklessly, in extreme disregard for human life," did not state a legal conclusion because the terms "recklessly" and "extreme disregard for human life" do not have a legal meaning distinct from everyday usage).

At Perkins's trial, the Government asked House whether, based on his assessment of the situation, he saw "any law enforcement reason for [Perkins's] kicks[.]" (J.A. at 258.) Similarly, the Government asked Burnett whether there was "any legitimate reason for [Perkins to

---

11. We noted in *Barile* that "in some circumstances, opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible." *United States v. Bar-* *ile,* 286 F.3d 749, 760 n. 7 (4th Cir.2002)(quoting *Weinstein's Federal Evidence* § 704.04[2][a] (2d ed.2002)).

kick] Mr. Koonce[.]" (J.A. at 525–26.) Under 18 U.S.C.A. § 242, courts employ an "objective reasonableness" standard to assess an officer's use of force. *See Mohr,* 318 F.3d 613, 623 (4th Cir.2003). This standard requires the jury to determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir.1996).[12] Clearly, then, the word "reasonable" in the § 242 context has a specific legal meaning, but the distinction between its legal and common meaning is not as clear as with other more technical terms like "negligence" or "fraud," i.e., terms that had their common vernacular stem from their legalistic roots.

In *Kopf,* a § 1983 excessive force case involving the use of slapjacks and a police dog, we stated that the facts of every case should determine whether testimony would be helpful to the jury and suggested that "[w]here force is reduced to its most primitive form—the bare hands—expert testimony might not be helpful." *Kopf,* 993 F.2d at 378. We declined to decide whether the experts in that case could have given their opinion on the "ultimate issue" of whether the force used was "reasonable"; indeed, we acknowledged that such testimony might have been inadmissible. *Id.* n. 3.

Later in *Mohr,* a § 242 case also involving a police dog, we held that an expert's

rebuttal testimony that an officer "violated 'prevailing police practices nationwide in 1995,' " that the officer's use of the dog was "inappropriate," and that there was "no reason" for the officer's failure to give a canine warning was admissible under Rule 704(a). *Mohr,* 318 F.3d at 624. We attached particular importance to the fact that the testimony was delivered during rebuttal, after the defendant's experts had testified to the reasonableness of the defendant's use of the police dog. *Id.*

*Mohr* suggests that the challenged testimony in this case did not transgress Rule 704(a).[13] Like in *Mohr,* the officers here testified that they saw "no reason" for Perkins's use of force. *Cf. id.* Taking helpfulness to the jury as our guiding principle, we conclude that the district court did not err in admitting the challenged portions of Officer House's and Inspector Burnett's testimony. While a very close question, we conclude that the Government's questions were phrased in such a manner so as to avoid the baseline legal conclusion of reasonableness. *See Torres,* 758 F.2d at 151. The officers' responses that they personally saw no reason for Perkins's kicks provided the jury with concrete examples against which to consider the more abstract question of whether an "objectively reasonable officer" would have employed the same force. The Government's questions were not couched in terms of objective reasonableness; in-

---

12. *Leavitt* is a § 1983 excessive force case. "Because 18 U.S.C.A. § 242 is merely the criminal analog of 42 U.S.C.A. § 1983, and because Congress intended both statutes to apply similarly in similar situations, our civil precedents are equally persuasive in this criminal context." *United States v. Cobb,* 905 F.2d 784, 788 n. 6 (4th Cir.1990).

13. Our review of other circuits' decisions does not produce a clear-cut answer; indeed, courts have reached conflicting conclusions. *Compare Hygh v. Jacobs,* 961 F.2d 359, 363

(2d Cir.1992)(in a § 1983 case, holding that Rule 704 was violated by an expert's testimony that defendant's use of force was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper") *with United States v. Myers,* 972 F.2d 1566, 1577–78 (11th Cir.1992)(no abuse of discretion in admitting lay opinion testimony that defendant's use of stun gun was not reasonable when witness "properly framed his opinion in accordance with prevailing police standards").

stead, they honed in on Officer House's and Inspector Burnett's *personal* assessments of Perkins's use of force. We recognize that this distinction is a fine one. When the common and legal meanings of a term are not easily unfurled from each other, however, as is certainly the case with "reasonable," it is difficult for us to conclude that testimony was unhelpful to the jury unless the testimony actually framed the term in its traditional legal context. In this case, then, Rule 704 justifies differentiating between the officers' testimony that they saw no "law enforcement" or "legitimate" reason for Perkins's kicks and testimony that Perkins's actions were "objectively unreasonable." To be sure, this distinction must be measured in inches, not feet. Nevertheless, we cannot hold that the officers' testimony was necessarily unhelpful, nor can we say that it merely told the jury what verdict to reach or "supplant[ed][the] jury's independent exercise of common sense." *Kopf,* 993 F.2d at 377.[14]

Perkins also challenges the admission of Fisher's, Waldron's, Jones's, and Allen's testimony about the reasonableness of his use of force. As noted above, because Perkins did not object at trial, we review the admission of this opinion testimony for plain error. Given our conclusion that the district court did not err in admitting the objected-to portions of House's and Burnett's testimony, we easily conclude that the district court did not commit reversible plain error in admitting these officers' opinions about the reasonableness of Perkins's use of force. *See Olano,* 507 U.S. at 732–34, 113 S.Ct. 1770; *see also supra* note 14.

## IV.

■ Perkins's final contention is that the evidence against him was insufficient to sustain his felony conviction under 18 U.S.C.A. § 242. We review de novo a district court's denial of a motion, made pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for judgment of acquittal. *United States v. Alerre,* 430 F.3d 681, 693 (4th Cir.2005). In conducting such review, we must uphold a jury verdict if there is substantial evidence, viewed in the light most favorable to the Government, to support it. *See Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos,* 94 F.3d 849, 862 (4th Cir.1996)(en banc). "In applying this standard of review, we must remain cognizant of the fact that '[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.' " *Id.* (quoting *United States v. Murphy,* 35 F.3d 143, 148 (4th Cir.1994)).

To be convicted of a felony under 18 U.S.C.A. § 242, the Government must prove that the defendant "willfully subject[ed][a] person ... to the deprivation of

---

14. Even assuming for the sake of argument that the district court erred in admitting this testimony, the error was harmless. The evidence against Perkins was cumulative and overwhelming. House's brief testimony about the reasonableness of Perkins's use of force followed his damning factual testimony about the circumstances of Perkins's kicks to Koonce. Moreover, there was substantial independent testimony from other witnesses about Perkins's use of force. Finally, the district court later defined "unreasonable force" for the jury after instructing them that they alone were to judge the reasonableness of Perkins's use of force, instructions that undoubtedly had a curative effect.

any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, ... [and] bodily injury result[ed] [from such deprivation]." 18 U.S.C.A. § 242. Although the statute does not define "bodily injury," the term is defined identically in four other provisions of Title 18. *See* 18 U.S.C.A. §§ 831(f)(5) (West 2000); 1365(g)(4) (West 2000); 1515(a)(5) (West 2000); 1864(d)(2) (West 2000). All of these provisions define "bodily injury" as "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of [a/the] function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary". *Id.* While we have not had occasion to consider the applicability of this definition to § 242, at least three of our sister circuits have, and each has applied the definition in the § 242 context. *See United States v. Gonzales,* 436 F.3d 560, 575 (5th Cir.2006); *United States v. Bailey,* 405 F.3d 102, 111 (1st Cir.2005); *United States v. Myers,* 972 F.2d 1566, 1572 (11th Cir.1992)(noting that "[w]hen Congress uses, but does not define a particular word, it is presumed to have adopted that word's established meaning"). We follow suit and adopt the established definition of "bodily injury" for the purposes of § 242.

Perkins argues that because the only proof of bodily injury was the evidence that Koonce reacted to pain stimuli during the Glasgow coma test, the evidence was insufficient as a matter of law to prove that Koonce felt pain at the time of Perkins's kicks, when Koonce was unconscious. Perkins's argument is without merit. The definition of "bodily injury" that we adopt today does not require cataclysmic injuries: physical pain alone or any injury to the body, no matter how fleeting, suffices. Dr. Farran, the Government's medical expert and the physician attending to Koonce the night of his admission to the hospital, testified that blunt force trauma—Perkins's kicks certainly qualify as such—was the likely cause of Koonce's pneumothorax and the bruising to his left lung. Likewise, the Glasgow coma test indicated that Koonce moved away in response to pain; Dr. Farran testified that unconscious individuals are able to feel and react to pain. Moreover, there was uncontroverted testimony that Perkins delivered forceful running kicks to Koonce's abdomen; the jury could have found that Perkins's kicks caused Koonce to suffer a "bruise" on his left lung, "physical pain," "impairment of [the] function" of his lung, or "temporary injury," any of which would have satisfied Title 18's definition of "bodily injury." Therefore, the evidence provided a sufficient basis for a rational trier of fact to find that Perkins caused "bodily injury" to Koonce. We cannot reverse simply because the jury exercised its fact-finding discretion. *Burgos,* 94 F.3d at 862–63.

## V.

In sum, the district court did not commit reversible error in admitting the officers' opinion testimony that centered on the reasonableness of Perkins's use of force. Moreover, viewing the evidence in the light most favorable to the Government, a reasonable jury unquestionably could have found that Perkins caused "bodily injury" to Koonce. Accordingly, we affirm Perkins's felony conviction.

*AFFIRMED*