**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 09a0599n.06

**No. 07-5825**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff-Appellee,** | **FILED**<br>**Aug 25, 2009**<br>LEONARD GREEN, Clerk |
| **v.** | ON APPEAL FROM THE UNITED |
| | STATES DISTRICT COURT FOR THE |
| **DONALD R. WILSON,** | MIDDLE DISTRICT OF TENNESSEE |
| **Defendant-Appellant.** | |
| _____ / | |

BEFORE:     CLAY and SUTTON, Circuit Judges; and THAPAR, District Judge.[*]

**CLAY, Circuit Judge.** Defendant Donald R. Wilson appeals from a judgment entered following a jury trial convicting him of one count of depriving inmate Joshua Roberson of his Eighth Amendment rights, resulting in bodily injury, in violation of 18 U.S.C. § 242. On appeal, Wilson argues that the district court erred in denying his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure because the government presented insufficient evidence for the jury to find that Roberson sustained bodily injury. In addition, Wilson challenges the district court's denial of his motion for severance, arguing that joinder was improper and that the failure to sever Wilson's trial from that of his co-defendant, Stanley C. Hawkins, prejudiced his defense. For the reasons set forth below, we **AFFIRM** Wilson's conviction and sentence.

## I.     BACKGROUND

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

### A.     Factual Background

In 2002, Wilson was appointed Jail Administrator and Chief of Corrections of the White County Jail in Sparta, Tennessee (the "Jail"). In that position, Wilson had responsibility for the day-to-day operations of the Jail, as well as supervisory authority over the corrections officers working at the Jail. Wilson created the position of correctional sergeant to assist him in supervising the correctional officers, and selected Hawkins for the position.

On May 5, 2004, Roberson, an inmate at the Jail, was involved in an altercation with Officer Weldon, a night-shift corrections officer. Officer Weldon testified that Roberson had refused to return to his cell at the conclusion of his recreation time and that, when Officer Weldon informed Roberson that he had to return to his cell, Roberson "got irate . . . and came charging up the staircase" at Officer Weldon. (Tr. Vol. II at 208.) Roberson then "yelled" and "hit" Officer Weldon and grabbed Officer Weldon's arm, "trying to pull [him] down the stairs." (Tr. Vol. II at 209.) After another officer arrived to assist Officer Weldon, Roberson returned to his cell. Officer Weldon was not injured during the incident.

The next morning, as part of the routine "pass down" from the night shift, night-shift officers informed Wilson that Roberson had attacked Officer Weldon. Prior to May 6, 2004, Roberson was housed in one of the Jail's isolation units, cell 139, which had a toilet, drain, and shower inside of the cell. After Wilson learned of Roberson's attack, however, Wilson ordered Officer Weldon and several other corrections officers to bring Roberson to the intake area of the Jail, place him in a straightjacket, and lock him in one of the intensive management or "intake" cells.

2

Shortly after officers restrained Roberson in the straightjacket in cell 107, Roberson needed to use the restroom. Accordingly, several officers removed Roberson from the straightjacket and escorted him to the restroom. When Roberson returned from the restroom, Wilson was present in the intake area, and "gestur[ed]" for Roberson to "get in [his] cell." (Tr. Vol. VII at 70.) Roberson then threw his breakfast tray on the floor and "grabbed [Wilson] and started hitting him" in the head. (Tr. Vol. VI at 141.) Eventually, several corrections officers restrained Roberson and helped Wilson out of the cell.

After officers locked Roberson in his cell, Wilson ordered Officer Garrett to open Roberson's cell door. Wilson then entered Roberson's cell and, according to Officer Garrett, "told [Roberson] that he wasn't scared of him and that [Roberson was] going to fucking pay" for attacking Wilson. (Tr. Vol. III at 21.) Wilson also told Roberson that Roberson would remain in cell 107 "until hell freezes over or [Roberson] g[o]t out of jail." (*Id.*) After Wilson left Roberson's cell, Officer Farrell accompanied Wilson to the hospital to receive medical treatment for the cut on his eye.

While at the hospital, Wilson told Officer Farrell to relay orders to the other corrections officers that Roberson be kept in cell 107 in his boxer shorts and a straightjacket "23 hours a day" until Wilson said differently. (Tr. Vol. VII at 76.) Wilson issued similar orders when he returned to the Jail later that day. For example, Officer Garrett testified that Wilson ordered corrections officers to keep Roberson "in his skivvies in the straightjacket" and that "[t]he only time he was to be out of the straightjacket was either when he showered or when he ate or when he went to the bathroom." (Tr. Vol. III at 47.) However, after "realiz[ing]" that he could not keep Roberson in the straightjacket all day, Wilson ordered corrections officers to keep him in the straightjacket and to

3

restrain him while out of the straightjacket for equal lengths of time[1] "until further notice." (Tr. Vol. VII at 79.) Further, Wilson directed that Roberson be restrained with handcuffs and shackles during the time Roberson was not wearing the straightjacket. Wilson also ordered that Roberson could not have a blanket or a mattress in his cell. In addition, Wilson's orders required that three male officers, at least one armed with a baton, be present when Roberson's cell was opened. Wilson subsequently posted a handwritten order directing corrections officers to keep Wilson in a straightjacket from 6 p.m. to 6 a.m. and reiterating the requirement that three male officers, at least one armed with a baton, be present to escort Roberson from his cell.

At trial, the government elicited substantial testimony regarding the effect of Wilson's orders. Officer Miller stated that there were not always three male officers working during a shift, which meant that Roberson would have to stay in the cell throughout the entire shift. Similarly, Officer Ferrell testified that the three-man rule meant Roberson frequently had to wait long periods of time to use the bathroom, eat, and shower. Because the three-man rule made it difficult for Jail staff to let Roberson out of his cell during shifts, he often urinated on himself in his cell.[2]

The government also presented evidence regarding the condition of Roberson's cell. Cell 107 is located in the intake area of the Jail, and generally is used for short-term confinement of

---

[1] Officer Daniels testified that Wilson specified initially that Roberson be in the straightjacket for four hours, then out of the straightjacket for another four hours.

[2] Although on direct examination Wilson denied that there was a shortage of male officers during any of the shifts, he acknowledged on cross-examination that he previously had told a local newspaper reporter that he had staffing problems and, as a result, was unable to staff his shifts with three male officers.

violent inmates who require observation, or temporary holding of incoming prisoners, but is not intended for long-term segregation. Cell 107 is approximately six feet by eight feet, with a small window, fluorescent light, and concrete bench. The cell does not have a bathroom, sink, or shower. According to the corrections officers, the concrete floors and vent caused cell 107 to become cold. Several witnesses testified that, while Roberson was occupying the cell, the cell had a strong smell of urine, feces, and body odor. Corrections officers described the smell as similar to "the bottom of a septic tank" (Tr. Vol. II at 111; Tr. Vol. III at 173), a "pig sty" (Tr. Vol. III at 247), or a "sewer" (Tr. Vol. V at 104). At trial, corrections officers testified that Roberson urinated and defecated on himself while in cell 107, and that his boxers were soiled with human waste. Witnesses also stated that his straightjacket was dirty and smelled of body odor, and that the straps were stained. Corrections officers testified that, as a result of his conditions of confinement, "[Roberson] was just sort of limp" and that he "didn't have much life at all." (Tr. Vol. II at 116.) Roberson also "became pale and thin," "withdrawn" (Tr. Vol. V at 105), and appeared "confused" and "dazed" (Tr. Vol. V-B at 66) while confined in cell 107.

At trial, several corrections officers stated that they expressed their concerns regarding Roberson's cell conditions to Wilson, informing Wilson that Roberson's conditions of confinement were inhumane and contrary to Tennessee Correction Institute policies.[3] Nonetheless, Wilson

---

[3]There was extensive testimony about the officers' training regarding the use of force against inmates, including descriptions of the use of force. Because Wilson does not challenge the sufficiency of the evidence with respect to willfulness or other elements of a § 242 violation, such testimony is not relevant to Wilson's argument that the district court erred in denying his motion for judgment of acquittal.

expressed little interest in changing his orders and told the corrections officers who had expressed

concern that Roberson would "just have to wait" when there were not enough officers to let him out

of the cell. (Tr. Vol. III at 61-65.) Roberson ultimately remained in cell 107 for approximately three

weeks, after which time he returned to isolation cell 139.

## B. Procedural History

On June 5, 2006, a federal grand jury returned a two-count indictment charging Wilson and

Hawkins with separate counts of willfully depriving Roberson of his constitutional rights in violation

of 18 U.S.C. § 242. Count one charged Wilson with confining Roberson "in conditions that willfully

deprived Joshua Roberson of the right . . . to be free from cruel and unusual punishment while in

official custody and detention, resulting in bodily injury to Joshua Roberson." (ROA 17.) Count

two charged Hawkins with violating 18 U.S.C. § 242 by using "a chemical agent and beat[ing]

Joshua Roberson . . . and thereby willfully depriv[ing]" Roberson of his Eighth Amendment rights,

"resulting in bodily injury . . . and including the use of a dangerous weapon."[4] (ROA 18.)

Prior to trial, Wilson moved to sever his trial from that of Hawkins. Following a hearing,

the district court denied the motion. At the close of the government's proof, Wilson's counsel

moved for a judgment of acquittal "based on the fact of the complete posity [sic] of evidence

---

[4]After Hawkins learned of Roberson's attack on Wilson, Hawkins retrieved a can of "Clear-Out," a chemical used to subdue inmates in a riot situation, tossed the can into Roberson's cell, and stuffed a towel under the door of the cell. Although the intake area was evacuated due to the fumes from Clear-Out, Roberson remained in his cell. According to several witnesses, Roberson was screaming in pain. A witness also testified that he saw Hawkins enter Roberson's cell after using Clear-Out and hit Roberson on his back with a baton. It is these actions that form the basis for the charges against Hawkins in count two of the indictment.

respecting bodily injury." (Tr. Vol. V-B at 71.) Counsel also argued that there was no proof of willfulness. The district court denied the motion for judgment of acquittal, concluding that, "taking the evidence in the light most favorable to the prosecution[, a] rational juror could find the elements of bodily injury [and] willfulness." (Tr. Vol. V-B at 75.) After the close of all proofs, Wilson again moved for acquittal. The district court denied the motion, concluding that the case should be submitted to the jury.

At the charge conference, both counsel for Hawkins and counsel for Wilson indicated that they did not want an instruction on the lesser included offense of deprivation of rights without bodily injury. However, in a bench conference before the court instructed the jury, Hawkins requested that the court give the lesser-included-offense instruction. At that time, counsel for Wilson moved for a severance, which the district court denied.[5] The jury found Wilson guilty of violating 18 U.S.C.

---

[5]Counsel for Wilson stated: "Then I'm going to move for a severance." (Tr. Vol. IX at 6.) However, subsequent exchanges between counsel for Wilson and the court did not necessarily understand her to be moving for a severance:

> MS. CRIPPS: By way of clarification, the Court stated a motion for severance had never been filed by either defendant in this case, or something to that effect, and that's not true.
> THE COURT: Was there an early severance motion?
> MS. CRIPPS: The record will reflect that Defendant Wilson did file a motion for severance, and that the motion was denied. And it was argued on the same date as the motion for a bill of particulars, which was granted by the Court in part.
> THE COURT: Thank you for correcting that. However the person who's squawking about this issue is Mr. Hawkins, and Mr. Hawkins did not move for a severance.
> MS. CRIPPS: I understand. I wanted to clarify.

(ROA 16.)

§ 242 in a manner that resulted in bodily injury, and the district court sentenced Wilson to a thirty-three-month term of imprisonment. Wilson filed a timely notice of appeal.

## II.     MOTION FOR SEVERANCE

### A.      Standard of Review

This Court reviews a district court's denial of a motion to sever defendants' trials for abuse of discretion. *United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007). To establish an abuse of discretion, a defendant must make "'a strong showing of prejudice.'" *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) (quoting *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985)). A defendant "must prove that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). Where a defendant fails to renew a motion to sever at the close of all the evidence, however, this Court reviews the district court's decision for plain error. *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002).

### B.      Analysis

In the district court, Wilson filed a motion for severance pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, asking that Wilson be "tried separate and apart from . . . Hawkins." The district court denied Wilson's motion. In challenging this ruling on appeal, Wilson argues that evidence introduced with respect to the pain caused by Hawkins' actions was "improperly imputed" to Wilson. Additionally, for the first time, Wilson contends that "the two defendants should not have been joined together to begin with" because joinder was improper under Rule 8 of the Federal Rules of Criminal Procedure. (Def.'s Br. 29.) The government contends that Wilson has waived his right

8

to challenge the joinder of Wilson and Hawkins in the indictment under Rule 8 because Wilson never made this argument in the district court.

In the district court, Wilson filed a motion for severance "pursuant to Rule 14(a)." (ROA 44.) Wilson did not base his motion for severance on the grounds that the indictment improperly joined Wilson and Hawkins, and Wilson's motion never cited Rule 8(b). As a result, Wilson has failed to preserve his misjoinder argument for appeal. "A Rule 14 severance motion does not preserve a Rule 8 misjoinder objection." *United States v. Weiner*, 988 F.2d 629, 634 (6th Cir. 1993) (finding the defendant's misjoinder argument waived for failure to raise the issue in the district court); *accord Gallo*, 763 F.2d at 1527 (failing to "claim a Rule 8(b) misjoinder in the proceedings below" constitutes a "fail[ure] to preserve th[e] claim on appeal").

With respect to Wilson's severance motion, the government argues that Wilson also failed to preserve the issue of severance by failing to move for severance at the close of all proofs. "[A] severance motion will be deemed waived if it is not renewed at the end of the evidence." *United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987). Wilson's counsel did not file a motion for severance at the close of the evidence. Instead, after counsel for Hawkins requested an instruction on the lesser included offense of deprivation of constitutional rights without bodily injury, counsel for Wilson stated that she was "going to move for a severance," but presented no further argument. (Tr. Vol. IX at 6.) Likely because the court did not understand her to be moving for a severance, the district court never ruled on the motion.

Regardless of whether Wilson properly preserved his argument for appeal or plain error review applies, *see Walls*, 293 F.3d at 966, the district court did not abuse its discretion in denying

Wilson's motion to sever. "As a general rule, persons jointly indicted should be tried together because 'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.'" *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (quoting *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir. 1993)); *accord Zafiro*, 506 U.S. at 537 ("There is a preference in the federal system for joint trials of defendants who are indicted together."). Nonetheless, Rule 14(a) "recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government." *Zafiro*, 506 at 538. Rule 14(a) provides that "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). In interpreting Rule 14, the Supreme Court has held that

> when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Zafiro*, 506 U.S. at 539.

Wilson argues that the district court erred in denying the motion to sever because "it was effectively impossible for the jury to . . . distinguish evidence concerning the different proof for each defendant regarding . . . bodily injury and pain." (Def.'s Br. 36.) While at trial the government might have attempted, as Wilson argues, to impute Hawkins' use of Clear-Out to Wilson for purposes of proving bodily injury, counsel objected to the first instance of such testimony. Following the objection, the district court gave an extensive cautionary instruction to the jury:

Members of the jury, Mr. Wilson and Mr. Hawkins are charged separately with different crimes. They are not charged with participating in a conspiracy with one another. They are not charged with aiding and abetting each other in the crime that is charged against the other one. They are not charged with in any way carrying out the other person's crime. . . . [Y]ou must separate the evidence here and find whether Mr. Wilson is guilty of what he is charged with . . . and/or Mr. Hawkins is guilty of what he is charged with.

And so I want to make that very clear to you that the government has not charged them with conspiracy or helping each other carry out each other's alleged crime. Okay?

Sometimes in a case it's a little harder to keep it separate than in others. I don't think this will be a difficult task . . . . Mr. Wilson is charged in Count One with one crime; Mr. Hawkins is charged in Count Two with another crime. Mr. Hawkins is charged with doing something on one particular day. Mr. Wilson is charged with a course of conduct over separate days. . . . All right.

(Tr. Vol. II at 60-61.)

Similarly, in instructing the jury after the close of evidence, the court emphasized to the jury that "[their] decision on one defendant, whether it is guilty or not guilty, should not influence [their] decision on the other defendant." (ROA 271.) Later in its instructions, the court again reminded the jury that "each defendant is only on trial for the particular crime charged against him in the Indictment. Your job is limited to deciding whether the government has proved the crime charged as to either defendant." (ROA 296.)

Consequently, the district court clearly instructed the jury that it was to consider each defendant separately. The Supreme Court has noted that "limiting instructions . . . often will suffice to cure any risk of prejudice" that is present when defendants are tried together. *Zafiro*, 506 U.S. at 539. In light of this direction from the Supreme Court, we have affirmed the denial of a motion for severance where "the trial judge was very careful to instruct the jury on its duty to consider separately the evidence against each defendant." *United States v. Lloyd*, 10 F.3d 1197, 1216 (6th

Cir. 1993). Moreover, "[j]uries are presumed to be capable of following instructions, like those given in this case, regarding the sorting of evidence and the separate consideration of multiple defendants." *Walls*, 293 F.3d at 966.

In this case, the jury's verdicts with respect to Hawkins and Wilson demonstrate that the district court's instructions were effective. The jury found that Wilson deprived Roberson of his constitutional rights, and that the deprivation resulted in bodily injury. In contrast, although the jury found Hawkins guilty of depriving Roberson of his constitutional rights, it concluded that bodily injury did not result from Hawkins' actions. The different verdicts demonstrate that the jury could "compartmentalize and distinguish between the evidence against each defendant," and therefore Wilson cannot show that prejudice resulted from the joint trial. *Lloyd*, 10 F.3d at 1215; *see Phibbs*, 999 F.2d at 1067-68 (noting that, because the jury acquitted some defendants but not others, the "jury was plainly able to view [the multiple defendants] as distinct individuals in rendering its verdicts," and there was no abuse of discretion in denying the motion for severance). We therefore conclude that the district court did not abuse its discretion in denying Wilson's motion for severance.

## III. MOTION FOR ACQUITTAL

### A. Standard of Review

Wilson next argues that the district court erred in denying his motion for acquittal on count one, which charged him with violating Roberson's Eighth Amendment rights in violation of 18 U.S.C. § 242. "In order to appeal a jury's verdict on the basis of insufficient evidence, the defendant must have moved for acquittal in the district court pursuant to Rule 29." *United States v. McBride*, 362 F.3d 360, 368 (6th Cir. 2004). Because Wilson made such a motion at the close of all proofs,

we review the district court's decision to deny Wilson's motion *de novo*. *United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007). In reviewing the sufficiency of evidence, the relevant inquiry is "'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Meyer*, 359 F.2d 820, 826 (6th Cir. 2004)); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### B. Analysis

The relevant portion of 18 U.S.C. § 242 provides:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section . . . , shall be fined under this title or imprisoned not more than ten years, or both . . . .

18 U.S.C. § 242. To convict Wilson on count one, the jury had to find beyond a reasonable doubt that Wilson acted "(1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." *United States v. Lanier*, 520 U.S. 259, 264 (1997); *see United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008). Because Wilson was charged with a felony offense under § 242, the jury also had to find that Roberson suffered bodily injury as a result of the deprivation. *See United States v. Perkins*, 470 F.3d 150, 153 n.3 (4th Cir. 2006) ("To convict Perkins of a felony under § 242, the jury had to find that (1) Perkins deprived Koonce of a right secured by the Constitution or laws of the United States, in this case the Fourth Amendment right to be free from the use of unreasonable force; (2) Perkins acted willfully; (3) Perkins acted

13

under color of law; and (4) Koonce suffered bodily injury as a result of Perkins's conduct.")[6] On appeal, Wilson challenges the denial of his motion for acquittal solely on the grounds that there was insufficient evidence to show that Roberson suffered "bodily injury."

Section 242 does not define the term bodily injury. However, as several other circuits have recognized, the term "bodily injury" is "defined identically in four other provisions of Title 18" as: "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of [a/the] function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." *Perkins*, 470 F.3d at 161 (noting that 18 U.S.C. §§ 831(f)(5), 1365(g)(4), 1515(a)(5), and 1864(d)(2) contain identical definitions of the term "bodily injury"); *accord United States v. Gonzales*, 436 F.3d 560, 575 (5th Cir. 2006); *United States v. Bailey*, 405 F.3d 102, 111 (1st Cir. 2005); *United States v. Myers*, 972 F.2d 1566, 1572 (11th Cir. 1992); *cf. United States v. DiSantis*, 565 F.3d 354, 362 (7th Cir. 2009) (approving jury instruction based on this definition). Consistent with this definition, the district court instructed the jury that "bodily injury includes any

---

[6]"Bodily injury" is not an element of the first crime described in 18 U.S.C. § 242. Instead, the element of bodily injury relates to whether Wilson was guilty of a felony, and thus could be sentenced for more than one year as a result of his conviction. *See* 18 U.S.C. § 242 (noting that "if bodily injury results from the acts committed in violation of this section," the defendant "shall be fined under this title or imprisoned not more than ten years, or both"). As explained by the Tenth Circuit:

> Section 242 makes "it criminal to act (1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." If these elements are met, and if bodily injury (but not death) results from the willful deprivation of the constitutional right, the defendant is subject to a sentencing enhancement of up to ten years.

*United States v. LaVallee*, 439 F.3d 670, 687 (10th Cir. 2006). Wilson did not request that the district court give an instruction as to the lesser included offense of deprivation of civil rights without bodily injury.

injury to the body including physical pain or a physical injury, such as a cut, abrasion, bruise, fracture or disfigurement. The injury need not be significant, severe or permanent." (Tr. Vol. IX at 41-42, 53.) Wilson does not dispute this definition of bodily injury. Instead, Wilson argues that the government failed to introduce evidence demonstrating that Roberson actually suffered physical pain or injury.

Viewing the evidence presented at trial in the light most favorable to the government, a rational juror could find that Roberson suffered physical injury *or* physical pain, both of which qualify as "bodily injury" for purposes of § 242. *See Perkins*, 470 F.3d at 161. First, Officer Dennis testified that Roberson had welts in his groin area—near where the straightjacket's strap would be—that looked like they were "red and raw" from "rubbing." (Tr. Vol. V-B at 65, 69.) Welts in the groin area would qualify as a "physical injury," as they are similar to a "cut, abrasion, or bruise." *See Perkins*, 470 F.3d at 161. Although Wilson does not contest that the welts would constitute a physical injury, Wilson argues that Officer Dennis' testimony did not establish the date that he saw the welts, or when the injury occurred. He also maintains that there is insufficient evidence that the straightjacket caused the welts. However, it is clear from Officer Dennis' testimony that he escorted Roberson from cell 107 during the three-week period in which Roberson was restrained in the straightjacket. At trial, several witnesses testified that Roberson was in a straightjacket at least twelve hours per day for three weeks. The jury was entitled to infer that Roberson was wearing the straightjacket in the days before Officer Dennis saw the welts on Roberson. The jury also could infer that the straightjacket's groin strap caused the welts based on the long periods of time that Wilson ordered Roberson restrained in the straightjacket, Roberson's lack of clothing, and Roberson's soiled

boxers. Thus, while there was no direct testimony from Roberson that the straightjacket caused the welts, the government presented substantial evidence from which the jury could infer that Wilson's orders caused the welts, and therefore caused physical injury for purposes of the element of "bodily injury."

Moreover, the fact that other witnesses testified that they did not see any marks or bruises on Roberson's body goes to the credibility of the various witnesses who testified at trial, not whether there was sufficient evidence to support the jury's finding that Roberson sustained bodily injury as a result of Wilson's actions in depriving Roberson of his constitutional rights. Further, many of the witnesses who denied seeing bruises or marks on Roberson's body witnessed him sitting in his cell rather than using the bathroom or showering as Officer Dennis did. We therefore conclude that the government presented sufficient evidence for a rational juror to find beyond a reasonable doubt that Roberson suffered physical injury—and therefore "bodily injury"—under § 242.

We also conclude that the jury could have found that Roberson sustained "bodily injury" because he suffered "physical pain." The government identifies four aspects of Roberson's confinement that could support a finding of physical pain. First, the government argues that Wilson suffered pain in the form of discomfort while waiting for three male officers to be present to take him to the restroom. The government also asserts that Roberson suffered the related pain of sickness when he was exposed to his own urine and feces as a result of not being escorted to the bathroom soon enough. Emphasizing the cold conditions of the cell and the fact that Roberson sometimes went without food for long periods of time, the government argues that the jury could infer that Roberson suffered pain from cold and hunger. Finally, the government points to the straightjacket

16

as another source of pain. Wilson argues on appeal that "the government's proof of 'pain' called for the jury to speculate that Mr. Roberson suffered pain by wearing the straightjacket," and that the fact that Roberson was kept in a cold cell cannot establish that Roberson suffered physical pain. (Def.'s Br. 23-24.)

Roberson did not testify at trial regarding the pain he felt as a result of his conditions of confinement. Further, corrections officers acknowledged that Roberson never complained of pain to them. Nonetheless, a rational jury could conclude that Roberson suffered physical pain as a result of his conditions of confinement. First, while Wilson argues that, in the absence of any testimony that wearing a straightjacket is painful the jury was forced to "speculate," a jury is permitted to reach reasonable conclusions based on the evidence presented—the government was not required to call Roberson to testify that he was, in fact, in pain. *See Gonzales*, 436 F.3d at 575 (relying on the testimony of officers that the inmate was in pain to conclude that the inmate suffered bodily injury). The jury heard substantial testimony regarding Roberson's cell conditions. The cell contained only a concrete bench, but Roberson had no blanket or mat to sleep on. In addition, Roberson's cell smelled of urine, body odor, and feces and, at times, also contained urine and feces. Because Wilson ordered three male officers to escort Roberson to the bathroom, Roberson was forced to wait to use the bathroom due to a shortage of male officers on certain shifts.

Based on this testimony, a reasonable juror could conclude that Roberson suffered "physical pain" from wearing a straightjacket for twelve hours at a time for three weeks, while forced to sleep on a concrete bench. *Cf. United States v. Cunningham*, 54 F.3d 295, 299 (7th Cir. 1995) (finding that "bodily injury" for purposes of 18 U.S.C. § 1515(a)(5)—one of the four statutes containing the

definition of "bodily injury" relied on to define the term under § 242—"encompasses practically any adverse impact on the victim, including simple physical pain or an extremely transitory injury"). Accordingly, we conclude that the evidence presented by the government at trial was sufficient for a rational juror to find Wilson guilty beyond a reasonable doubt of causing physical pain and thus bodily injury for purposes of 18 U.S.C. § 242. We therefore affirm the district court's denial of Wilson's motion for judgment of acquittal.

## IV.  CONCLUSION

For the reasons set forth above, we **AFFIRM** Wilson's conviction and sentence.