**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0193n.06
Filed: April 10, 2008

**No. 06-4018**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.                                 **ON APPEAL FROM THE UNITED
                                          STATES DISTRICT COURT FOR THE**

**DAVID D. LETNER,**                     **SOUTHERN DISTRICT OF OHIO**

    Defendant-Appellant.

_____/


BEFORE:    CLAY and  McKEAGUE, Circuit Judges; and BOYKO, District Judge.[*]

    **CLAY, Circuit Judge.**  Defendant David D. Letner challenges his conviction on two counts

of bank robbery, under 18 U.S.C. § 2113(a) & (d), and two counts of use of a firearm in a crime of

violence, under § 924(c)(2)(A)(ii).  He argues that the district court erred by admitting a government

witness' prior statements which were inconsistent with the witness' testimony.  Specifically,

Defendant challenges the district court's admission of two prior statements by his brother and co-

defendant:  an unsworn statement which was admitted as impeachment evidence, and a plea

agreement implicating Defendant which his brother adopted under oath at his plea hearing.  For the

_____

    [*]The Honorable Christopher A. Boyko, United States District Judge for the Northern District
of Ohio, sitting by designation.

reasons which follow, we hold that the district court did not abuse its discretion in admitting either statement, and **AFFIRM** Defendant's conviction.

## STATEMENT OF FACTS

On January 18, 2005 and again on January 26, 2005 two men robbed the National City Bank in Dayton, Ohio. Both robberies followed the same pattern. Two white men entered the bank together, disguised by a t-shirt or bandana wrapped around their head, and carrying a gun in their gloved hands. Although clothes, gloves and masks covered most of their features, enough of the robbers' eyes were exposed to allow witnesses to notice their red eyebrows and eyelashes.

Sometime after the second robbery, Defendant's sister-in-law Eva Letner contacted police to report a domestic dispute. Eva described Defendant David D. Letner and his brother to police, and the police subsequently obtained photos of the two men which showed that they had red eyebrows and eyelashes. Although both Letner brothers then became suspects in the National City Bank robbery investigation, no further progress was made in this investigation until March 12, 2005. On that date, Defendant's brother Gregg Letner was arrested while fleeing from an armed robbery and shootout at a Kroger grocery store. During a subsequent interrogation, Gregg admitted to four bank robberies, including the two at National City Bank, and named Defendant as his accomplice in the National City Bank robberies.

On May 26, 2005, Gregg Letner pled guilty to multiple counts, including three counts of bank robbery. During the plea colloquy, the judge read to Gregg a lengthy statement of the facts underlying his guilty plea, and a copy of this statement was provided for Gregg and his attorney to review. Included in this statement was an acknowledgement that "[o]n the afternoon of on or about January 26th, 2005, the Defendant Gregg T. Letner and his brother entered the same National City

2

Bank they had robbed on the January 18th of 2005," which they robbed again. (J.A. 193) Gregg testified under oath that he understood this statement of facts and that he had no questions regarding the statement. The district judge then asked Gregg if the statement represented "the facts underlying—allegedly underlying each of these counts that you wish to enter your pleas of guilty to." Gregg responded "Yes, sir." (J.A. 196)

Defendant's trial for his role in the bank robberies began on January 30, 2006. In preparation for the trial, the prosecution met with Gregg Letner and his attorney to discuss Gregg's testimony in his brother's trial. Although Gregg initially informed the prosecution that he would not be willing to testify against his brother, he eventually told the prosecution that he would testify at the trial. During his testimony at his brother's trial, Gregg described, in great detail, his own involvement in the bank robberies. He described how he disguised himself during the robberies. He described his own actions and those of his accomplice during the robberies, and he described how he and his accomplice would flee the bank in a stolen vehicle, only to abandon the vehicle a short distance away. When asked about the identity of his accomplice, however, Gregg testified that he had "no idea." (J.A. 845)

After asking several questions to lay the foundation for impeachment, the prosecutor then asked the following question:

> "[D]o you recall telling agents in response to questions about the first National Bank robbery on January 18th, 2005, that your brother, David Letner, entered the National City Bank located at 4789 West Third Street with you for the purpose of robbing—"

(J.A. 855) At this point, Defendant's attorney objected to this line of questioning, and his objection was eventually overruled.

3

In response to the ensuing line of questioning, Gregg continued his refusal to identify his brother as his accomplice. Despite many questions from the prosecutor seeking such an identification, Gregg eventually declared "I'm not going to say who was with me on the bank robberies. Period. No matter how many times you ask the question, I'm not going to tell you." (J.A. 889)

After Gregg's testimony, the judge instructed the jury that it could only consider Gregg's unsworn statements for impeachment purposes. Later in the proceeding, the judge allowed the prosecution to introduce the statement of facts accompanying Gregg's plea agreement as substantive evidence. In admitting this evidence, the judge again instructed the jury, this time informing them that, unlike Gregg's prior unsworn statements to law enforcement agents, the sworn statement could be considered as proof of Defendant's guilt.

The district court also heard testimony from Layshia Stewart and Kyra Redford, two sisters who were romantically involved with the Letner brothers during the time relevant to this case. The sisters' testimony corroborated much of Gregg Letner's testimony regarding the details of the robberies. Among other things, their testimony revealed that around the time of the bank robberies, the Letner brothers would treat both sisters to lavish, cash-funded shopping sprees and drug binges, even though neither brother was working at the time. The sisters also testified about overhearing conversations where Defendant and Gregg discussed covering their faces with t-shirts to hide their identities, and Kyra added that the clothes both brothers wore during the robberies were the same as those they "always wore" around the house. (J.A. 1180)

## DISCUSSION

### *Standard of Review*

4

A district court's decision regarding the admission of evidence is generally reviewed under an abuse of discretion standard. *Gibson v. United States*, 271 F.3d 247, 254 (6th Cir. 2001) (rev'd on other grounds). However, Defendant also raises constitutional challenges to the district court's admission of Gregg Letner's prior unsworn statements. "To the extent that Defendant's claims sound in due process, we review them *de novo*." *United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007).

*Analysis*

A witness' prior inconsistent statement may be admitted as substantive evidence if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement . . . was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . ." Fed. R. Evid. 801(d)(1). Defendant argues, however, that the district court abused its discretion in admitting the statement of facts accompanying Gregg Letner's plea agreement. According to Defendant, because the district judge only asked Gregg if the statement of facts represented the circumstances "allegedly" underlying the facts which he was pleading guilty to, Gregg never adopted that statement under oath.

While it is true that the district judge asked Gregg if the statement represented "the facts underlying—allegedly underlying each of these counts that you wish to enter your pleas of guilty to," (J.A. 196), Defendant places too much weight on the judge's use of the word "allegedly" in this context. During Gregg's plea hearing, he stated that he understood the plea agreement and that he was in accord with it in its entirety. Gregg then agreed that it was "the agreement and provisions that [he wished] to execute and enter [his] pleas of guilty upon." (J.A. 220) Furthermore, while Gregg was a witness at Defendant's trial, the prosecutor expressly asked Gregg if he remembered agreeing

5

to the statement of facts under oath, and Gregg testified that he did.  Given these facts, we cannot conclude that the district court abused its discretion by finding that Gregg had previously affirmed the entirety of his plea agreement under oath.  Accordingly, we hold that any prior inconsistent statements contained in that agreement were properly admitted as substantive evidence.

We reach a similar conclusion with respect to the admission of Gregg's unsworn statements made while he was being interrogated by police.  Defendant argues that under the common law, the Federal Rules of Evidence and the Due Process Clause, Gregg's unsworn statements implicating Defendant were not admissible even as impeachment evidence.  For the reasons that follow, these arguments lack merit.

A.    **Defendant's Common Law Claim**

Defendant first argues that, under the Second Circuit's decision in *United States v. Cunningham*, 446 F.2d 194 (2d Cir. 1971), "where the witness gives no testimony injurious to the party calling him, but only fails to render the assistance which was expected by professing to be without knowledge on the subject, there is no reason or basis for impeachment." *Id.* at 197.  This holding, however, is taken from an almost 40 year old opinion, and is nothing more than a statement of the old rule that a party may not impeach their own witness unless they are surprised by the witness' testimony. *See id.* ("the maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised . . . .")  While *Cunningham* represented an accurate statement of the law at the time it was decided, the Federal Rules of Evidence have removed *Cunningham*'s common law limitation on a party impeaching its own witness.  *See* Fed. R. Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."); *see also Cunningham*, 446 F.2d at 198 (acknowledging

6

that the impeachment evidence at issue in that case would be admissible under the then-proposed Federal Rules of Evidence). Because Defendant's common law claims rely on an outdated rule, they lack merit.

**B.      Defendant's Federal Rules of Evidence Claim**

Just as the district court did not violate any common law doctrine in admitting Gregg's unsworn statement, it also did not abuse its discretion under the Federal Rules of Evidence. Rule 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him," and Rule 613(b) permits a witness' prior inconsistent statement to be admitted as impeachment evidence, so long as "the witness is afforded an opportunity to explain or deny [the statement] and the opposite party is afforded an opportunity to interrogate the witness . . . ." Evidence of unsworn prior inconsistent statements by a witness may only be admitted for impeachment purposes against a criminal defendant, not as evidence supporting that defendant's conviction. *See Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 722 (6th Cir. 2005). However, when the district court instructs a jury to consider impeachment evidence only for its proper, limited purpose, "[w]e will presume that the jury followed this instruction." *United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006). "The presumption is overcome only where evidence has been admitted that is so prejudicial that, even with a limiting instruction, the defendant's right to a fair trial is compromised." *United States v. Burns*, 298 F.3d 523, 543 (6th Cir.2002).

We have held, however, that a prosecutor "may not employ impeachment by prior inconsistent statement 'as a mere subterfuge to get before the jury evidence not otherwise admissible.'" *Apanovitch v. Houk*, 466 F.3d 460, 485 (6th Cir. 2006). As Judge Posner has

explained, this Rule prevents prosecutors from bringing in through the back door hearsay evidence that could not enter through the front:

> [I]t would be an abuse of the rule, in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence-or, if it didn't miss it, would ignore it. The purpose would not be to impeach the witness but to put in hearsay as substantive evidence against the defendant, which Rule 607 does not contemplate or authorize.

*United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984).

Under the Seventh Circuit's formulation of this rule, whether impeachment evidence may be admitted hinges upon whether the prosecutor "knew" that a witness would not provide helpful testimony. *Id.* Similarly, the Fifth Circuit holds that "[t]he prosecution . . . may not call a witness it knows to be hostile for the primary purpose of eliciting otherwise inadmissible impeachment testimony, for such a scheme merely serves as a subterfuge to avoid the hearsay rule." *United States v. Hogan*, 763 F.2d 697, 702 (5th Cir. 1985) (rev'd on other grounds). The Fourth Circuit, however, has criticized this subjective standard as requiring a judge "to crawl inside the prosecutor's head to divine his or her true motivation." *See United States v. Ince*, 21 F.3d 576, 580 (4th Cir. 1994). Accordingly, that circuit applies a familiar objective standard to determine whether or not the prosecution may present impeachment evidence to the jury:

> [I]n determining whether a Government witness' testimony offered as impeachment is admissible, or on the contrary is a "mere subterfuge" to get before the jury substantive evidence which is otherwise inadmissible as hearsay, a trial court must apply Federal Rule of Evidence 403 and weigh the testimony's impeachment value against its tendency to prejudice the defendant unfairly or to confuse the jury.

*Id.*

We do not need to determine, however, which of these standards to apply to the instant case, as Gregg's unsworn statements are admissible under either test. Under the Fifth and Seventh Circuit's subjective test, we must ask whether the prosecution knew that Gregg Letner would not provide "useful evidence" in his testimony, *Webster*, 734 F.2d at 1192. Despite his unwillingness to name Defendant as his accomplice, however, Gregg's testimony provided the prosecution with a wealth of valuable evidence. Gregg provided a very detailed description of the bank robberies Defendant was charged with, including the clothes he and his accomplice wore, the manner in which they disguised themselves and the means by which they escaped. Much of this testimony confirmed statements by the Letner brothers' girlfriends, who testified about incriminating statements made by both brothers, and about the clothes they routinely wore. Because this Court affords wide deference a district judge's evidentiary ruling, *Gibson*, 271 F.3d at 254, under a subjective standard, the district court did not abuse its discretion by permitting Gregg to testify given the usefulness of the uncontroversial portions of his testimony to the prosecution. *See Webster*, 734 F.2d at 1192.

The impeachment evidence against Defendant was also admissible under the objective, Rule 403 balancing test. Under that test, evidence shall only be excluded when "its probative value is *substantially* outweighed by the danger of unfair prejudice." Fed.R.Evid. 403 (emphasis added). "Because appellate courts work with a record which cannot fully convey a trial's nuances, dynamics and atmosphere, they have a limited capacity to review the balance struck by the trial court. Consequently, we will not reject a trial court's balancing unless the 'substantial prejudice' clearly outweighs the 'probative value.' " *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006) (quoting *United States v. Swift*, 809 F.2d 320, 323 (6th Cir.1987)). Moreover, as "the prejudice to be weighed is the *unfair* prejudice caused by admission of the evidence. Evidence that is prejudicial

9

only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *Id.* (quoting *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir.1996) (emphasis in original)).

Admittedly, Gregg Letner's unsworn statements were highly prejudicial to Defendant—Gregg specifically named Defendant as his accomplice in the bank robberies. Nevertheless, when a jury is given a limiting instruction regarding its consideration of impeachment evidence, we have held that such an instruction limits the likelihood of unfair prejudice to the Defendant. *See United States v. Foster*, 376 F.3d 577, 592 (6th Cir. 2004). On the other side of the scale, Gregg Letner testified in great detail, and with remarkable candor, regarding his role in the bank robberies. It was only after hours of such testimony that he suddenly claimed that he did not know the answer to a question. Given the credibility which Gregg had established during his prior testimony, the jury might have been confused by the sudden uncertainty of an otherwise credible witness. Accordingly, the impeachment evidence offered by the prosecution is probative insofar as it communicated to the jury that they should not view Gregg's testimony regarding his accomplice as credible.

In light of the impeachment evidence's probative value, and the limiting instruction's effect in reducing its prejudicial value, we conclude that the district court did not clearly err in admitting the prosecution's impeachment evidence. Regardless of how we may have decided this question in the first instance, on appeal, "'we must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *Newsom*, 452 F.3d at 603 (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). Evaluating the evidence in such a light, we hold that the district court did not abuse its discretion under the Federal Rules of Evidence by admitting Gregg's prior unsworn statement.

10

**C. Defendant's Due Process Claim**

Finally, relying on this Court's decision in *United States v. Shoupe*, 548 F.2d 636 (6th Cir. 1977), Defendant argues that admitting Gregg Letner's prior unsworn statement would violate the Due Process Clause. In *Shoupe*, we held that a criminal defendant was denied a fair trial when the prosecutor, via a series of eighteen questions ostensibly asked to impeach a witness, recited the "entire substance" of the witness' prior unsworn statement to police. *Id.* at 640–41. According to *Shoupe*, "the recitation by the prosecutor of the entire substance of a witness's disavowed, unsworn prior statements, which, if credited by the jury, would be sufficient to sustain a conviction, abridged defendants' right to a fair trial in violation of the Due Process Clause of the 5th Amendment." *Id.* at 644.

We do not deny that *Shoupe* is superficially similar to the instant case. Both involve prior unsworn statements which, if believed by a jury, would be sufficient to sustain a conviction. *Shoupe*, however, distinguished its facts from those in *United States v. Harris*, 523 F.2d 172 (6th Cir. 1975), where we permitted impeachment evidence to be admitted in light of a jury instruction properly limiting the use of this impeachment evidence. *Id.* at 175. *Shoupe* did not hold, and we do not hold today, that a limiting instruction will save evidence which is "so prejudicial that, even with a limiting instruction, the defendant's right to a fair trial is compromised." *Burns*, 298 F.3d at 543. Nevertheless, the distinction between a jury which is properly instructed, and one which is not, was significant in *Shoupe*, 548 F.2d at 643, and it is significant in the instant case as well.

Indeed, the prior unsworn statement in this case is substantially similar to those which we found admissible in *Harris*. There, we upheld the admission of two witness' prior unsworn statements that the *Harris* defendant had been their accomplice during a bank robbery. *Id.* at

174–75. After those witnesses repudiated their prior unsworn statements at trial, we permitted those repudiations to be impeached by the witness' unsworn statements, noting that the district judge properly instructed the jury. *Id.* at 175. The rule we announced in *Harris* is no less applicable to Gregg Letner. Gregg made prior unsworn statements identifying his accomplice in two bank robberies; he repudiated those statements, and was impeached by them. Subsequent to this impeachment, the jury was properly instructed as to the purpose for which they could use the impeachment evidence. Accordingly, we hold that the district court did not violate due process by admitting Gregg Letner's unsworn statements.

## CONCLUSION

Both Gregg Letner's prior sworn statement and his prior unsworn statement were properly admitted. Accordingly, we **AFFIRM** Defendant's conviction.