RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0070p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                          No. 08-1532

VINCENZO BRONZINO,
                    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-20122-011—Avern Cohn, District Judge.

Argued: March 3, 2010

Decided and Filed: March 16, 2010

Before: MARTIN, ROGERS, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Carl J. Marlinga, MARLINGA LAW GROUP, PLLC, Clinton Township, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Carl J. Marlinga, MARLINGA LAW GROUP, PLLC, Clinton Township, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

McKEAGUE, Circuit Judge. Defendant Vincenzo Bronzino was found guilty in a bench trial of aiding and abetting money laundering, in violation of 18 U.S.C. § 2 and § 1956(a)(1)(A)(i) and (B)(ii). He was sentenced to two years' probation and required to pay a $2500 fine. On appeal, Bronzino does not deny that money laundering took place, but contends the prosecution's evidence was insufficient to prove he aided and abetted the offense. For the reasons that follow, we affirm.

1

**I**

The evidentiary facts are largely undisputed.  On October 22, 2003, defendant Vincenzo Bronzino gave $15,000 worth of lawfully obtained Greektown Casino chips to co-defendant Peter Messina in partial payment of an unlawful gambling debt.  Tape-recorded telephone conversations between the two men on October 22, 2003, show that Messina was initially reluctant to accept the chips in payment.  Messina doubted that he would be able to cash them in without signing for them.  In both conversations, Bronzino reassured Messina that he would be able to cash the chips in without showing identification or signing for them as long as he cashed them in in multiple transactions involving less than $10,000 each.[1]  It took two conversations, but Bronzino eventually prevailed upon Messina to overcome his reluctance.  Later that day, Messina, with the assistance of two associates, cashed in the chips at the Greektown Casino in a manner designed to avoid the applicable currency transaction reporting requirement.  Because the chips, in Messina's hands, represented proceeds of unlawful gambling, the intentional structuring of the transaction so as to avoid the reporting requirement constituted unlawful money laundering.

On March 1, 2006, the grand jury in the Eastern District of Michigan returned a thirteen-count indictment, charging fifteen defendants with various racketeering conspiracy, illegal gambling conspiracy, and money laundering offenses.  Based on the above conduct, defendant Bronzino was charged in a single count with aiding and abetting money laundering.  After a one-day bench trial on July 9, 2007, Bronzino was found guilty.  The district court issued an opinion explaining the verdict on August  14, 2007.  *United States v. Bronzino*, 2007 WL 2324978 (E.D. Mich. Aug. 14, 2007) (unpublished).  The district court's analysis is summed up rather succinctly:

> Bronzino was the teacher and Messina was the pupil.  To put it another way, Bronzino was the director and Messina was the actor.  Messina was fully aware of the fact that the chips were to be used to pay his gambling debt, only if Messina could cash them in a way that did not cause a report to the IRS to be generated.  Initially, Messina did not know how to accomplish

---

[1]The $10,000 threshold amount triggers currency transaction reporting requirements under 31 U.S.C. § 5313 for "financial institutions" like the Greektown Casino, so defined under 18 U.S.C. § 1956(c)(6)(A) and 31 U.S.C. § 5312(a)(2)(X).  To structure a financial transaction involving proceeds of some form of unlawful activity so as to avoid such a reporting requirement is a form of unlawful money laundering under 18 U.S.C. § 1956(a)(1)(B)(ii).

this. Once instructed by Bronzino, however, he was able to do so. This is a classic case of an aider and abetter to money laundering, and for these reasons Bronzino is guilty of the crime charged.

*Id.* at *4.

## II

Bronzino first contends the verdict is not supported by sufficient evidence. When a defendant challenges his conviction after a bench trial based on insufficiency of the evidence, we must determine "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caseer*, 399 F.3d 828, 840 (6th Cir. 2005) (quoting *United States v. Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992)). *See also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (same). Every reasonable inference is drawn in favor of the government. *Jackson*, 443 U.S. at 319; *Caseer*, 399 F.3d at 840.

Again, Bronzino does not argue that the charged money laundering did not occur; only that he was not shown to have aided and abetted it. To prove aiding and abetting, the government was required to establish two elements: (1) an act by Bronzino that contributed to the commission of the crime; and (2) the intent to aid in the commission of the crime. *United States v. Gardner*, 488 F.3d 700, 714 (6th Cir. 2007). Bronzino contends the evidence presented fails to make out either element (1) because his advisement of how Messina could structure the transaction was a matter of common knowledge and represented minimal contribution to the money laundering; and (2) because he did not join in Messina's intent to commit money laundering.

### A.  Bronzino's Involvement

Bronzino likens his participation to that of defendant Dr. Matthew Platt in *Morei v. United States*, 127 F.2d 827 (6th Cir. 1942), whose conviction for aiding and abetting the distribution of heroin was reversed. Platt did nothing more than provide the would-be heroin purchaser with the name and address of a potential supplier. Platt was not paid anything for his information, was not otherwise involved in the putative transaction, and did not expect to receive anything from the transaction. *Id.* at 831-32. The court reversed the conviction, concluding that Platt had not incited or encouraged the commission of the crime, and did not

engage in a "purposive association with the venture" or "share in the criminal intent or purpose of the principal." *Id*. Like Platt, Bronzino contends he merely provided Messina with information, did not participate in the actual cashing in of the chips, and did not intend to advise Messina on money laundering.

The government argues, however, and the district court agreed, that Bronzino's involvement was more akin to that of defendant Russell Winston in *United States v. Winston*, 687 F.2d 832 (6th Cir. 1982). Winston had facilitated a cocaine purchase by setting up the meeting place, introducing the would-be purchaser to the supplier, and accompanying him during the transaction. *Id.* at 833-34. Though there was no showing that Winston had a personal stake in the transaction, the court held the evidence, viewed in the light most favorable to the government, was sufficient to sustain the conviction for aiding and abetting. The court observed that, although Winston never touched or possessed the subject cocaine, he was no mere "knowing spectator," but was an active participant. *Id.* at 834-35. Winston was shown to be "the catalyst who put this transaction together." *Id.* at 835. "He clearly knew what was going on, and he intended by his actions to make the illegal venture succeed." *Id.*

Similarly here, as the government contends, and the district court found, Bronzino was the catalyst behind Messina's structuring of the transaction to avoid the currency transaction reporting requirement. It is evident that Messina was reluctant to accept the chips because he did not want to have to identify himself to Greektown Casino personnel in cashing them in. Yet, Bronzino, knowing the chips were offered in payment of his unlawful gambling debt, and wanting Messina to accept them, persuaded Messina in two different conversations that he could safely cash them in himself and explained how to do it. It is evident that, but for Bronzino's urgings and encouragement, Messina would not have accepted the chips in payment and would not have structured the cashing-in transaction in such a way as to avoid the reporting requirement.[2] Hence, viewing the record in the light

---

[2]In the first of his two recorded telephone conversations with Messina, Bronzino told him he was prepared to pay the entire $24,000 debt, but only had $9,000 in cash; the remainder being in casino chips. He asked Messina if he was willing to accept the chips, saying, "it's up to you." But when Messina said he didn't want the chips, Bronzino was quick to reassure him and eventually persuaded him to accept the chips.

So, one might ask, why didn't Bronzino simply cash in the chips himself? In his trial testimony, Bronzino explained that he had won over $30,000 in chips at the Greektown Casino just a day or two before Messina had called for payment of the debt. He was so excited about his winnings that he

most favorable to the government, it is apparent that Bronzino's involvement in and contribution to the unlawful activity, as "teacher" or "director," is more analogous to Winston's role as "catalyst," than to Dr. Platt's role as disinterested provider of information. We thus conclude that the first element of aiding and abetting was established by sufficient evidence.

## B. Bronzino's Intent

Bronzino insists that he had no intent specifically to aid Messina in money laundering. The structuring of the transaction served Messina's purpose of avoiding the triggering of the currency transaction reporting requirement. However, Bronzino contends that purpose was distinctly Messina's business, a purpose in which he did not join. He simply wanted to persuade Messina to accept the chips in satisfaction of this gambling debt. To be found guilty of aiding and abetting, Bronzino contends, the government was required to prove that he had "the same mental state as that necessary to convict a principal of the offense." *United States v. Searan*, 259 F.3d 434, 444 (6th Cir. 2001). Because his purpose for structuring the transaction was different from Messina's, Bronzino contends they did not have the same mental state.

Bronzino does not deny that money laundering occurred. The particular form of money laundering Bronzino was accused of aiding and abetting is defined at 18 U.S.C. § 1956 as follows:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or
>
> * * *
>
> (B) knowing that the transaction is designed in whole or in part—

---

immediately left the casino without cashing them in for two reasons. First, he was afraid that if he didn't leave the casino right away, he might be tempted to gamble again and possibly lose his winnings before he had the chance to pay off his debt to Messina. Second, he didn't want to leave the casino carrying more than $30,000 in cash. Trial tr. pp. 54, 64-66. Then, when Messina called to collect the debt, Bronzino explained, he had no time to cash in the chips, because Messina "wanted his money, you know, now." *Id.* at 55.

&ast; &ast; &ast;

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to. . . .

18 U.S.C. § 1956. There is no dispute that Bronzino knew the casino chips, in Messina's hands, represented proceeds of unlawful gambling. The district court further found that Bronzino, by "teaching" or "directing" Messina in a method whereby he could cash in the chips without having to identify himself and sign for the cash, evidenced his intent, like the defendant in *Winston*, "to make the illegal venture succeed." *Bronzino*, 2007 WL 2324978 at *3-4 (quoting *Winston*, 687 F.2d  at 835).

Indeed, to *this* extent, Bronzino had the same purpose as Messina in structuring the transaction. That is, even though the two men had somewhat different *motivations*—Bronzino wanting simply to satisfy his illegal gambling debt, and Messina wanting to carry on his illegal gambling business without risking detection—they shared the common *purpose* of consummating the transaction without triggering the federal reporting requirement, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii). In this respect, Bronzino is clearly shown to have aided and abetted Messina's unlawful transaction by associating himself with the venture, participating in it as something that he wished to bring about, and seeking by his actions to make it succeed. *See Winston*, 687 F.2d at 834. This is sufficient showing that Bronzino shared in Messina's criminal intent. *See United States v. Delgado*, 256 F.3d 264, 276-77 (5th Cir. 2001) (analyzing elements of aiding and abetting money laundering). This is true even though it is uncontroverted that Bronzino did not specifically understand the currency transaction reporting requirement associated with the $10,000 threshold. Trial tr. pp. 58-59, 66-67. The recorded telephone conversations make it clear that Bronzino was familiar with the $10,000 threshold, knew that it triggered identification and record-keeping procedures, and counseled Messina on how to avoid them. This evidence is sufficient to warrant a reasonable inference by a rational trier of fact that Bronzino joined in Messina's unlawful intent.

**III**

Finally, Bronzino argues the district court erred as a matter of law by finding him guilty of aiding and abetting the promotion of illegal gambling under 18 U.S.C. § 1956(a)(1)(A)(i) based exclusively on his participation as a bettor. Yet, irrespective of whether there is any merit in Bronzino's argument that mere participation in an illegal gambling business is insufficient to sustain the conviction, it is clear that the district court's verdict was not based on Bronzino's mere participation as a bettor. Rather, the district court clearly premised the guilty verdict on its finding that Bronzino participated not merely as a bettor, but as "teacher" and "director" in advising Messina about how to structure the transaction so as to circumvent the requirements of the law, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii). As explained above, the finding that Bronzino's conduct satisfied both elements of the aiding and abetting charge is supported by sufficient evidence and Bronzino has not identified any reversible error of law.

**IV**

Accordingly, defendant Bronzino's claims of error are rejected and the judgment of conviction is **AFFIRMED**.