NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0433n.06

No. 22-5814

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 11, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) | |
| ANTHONY GLENN BEAN, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: BATCHELDER, GRIFFIN, and BLOOMEKATZ, Circuit Judges.

GRIFFIN, Circuit Judge.

While defendant Anthony Bean was the Chief of the Tracy City Police Department and again later while he was the Chief Deputy of the Grundy County Sheriff's Office, he assaulted two arrestees on two separate occasions. Bean was subsequently fired, and charged and convicted of three civil-rights violations. On appeal, he raises several issues: (1) the district court's findings of fact regarding a serious bodily injury; (2) the sufficiency of the evidence supporting his convictions; (3) the district court's admission of hearsay testimony from a victim; and (4) the district court's exclusion of extrinsic evidence of a victim's prior inconsistent statements. Finding no error requiring reversal, we affirm.

I.

In July 2019, a federal grand jury indicted Bean for deprivation of rights under color of law in violation of 18 U.S.C. § 242. Counts I and II arose out of Bean's assault of arrestee F.M. in December 2017, and Counts IV and V arose out of Bean's assault of arrestee C.G. in August 2014.

The district court held a three-day bench trial in June 2021, after which it convicted Bean on Counts I, IV, and V. The following evidence was presented at the bench trial.

A.

*The assault of F.M.* On December 30, 2017, law enforcement officials pursued F.M. for driving under the influence. F.M. hit a ditch, lost control of his vehicle, and struck another vehicle on the side of the road. That vehicle, it turned out, was Bean's, which he and his civilian wife were inside during the collision.

After F.M. crashed his vehicle, then-Sequatchie County Sheriff's-Deputy Jacob Kilgore exited his vehicle, pulled his weapon, and ordered F.M. to exit the car. F.M. initially ignored J. Kilgore's commands, so J. Kilgore holstered his weapon, and, with the help of other officers, pulled F.M. out of the car window. F.M. "appeared impaired," so the officers put F.M. on the ground. J. Kilgore then was going to handcuff F.M., who, at that point, was "compliant."

While F.M. was lying on the ground but before he was handcuffed, J. Kilgore observed Bean approach F.M. and exclaim, "You almost killed me and my fucking wife"; then Bean struck F.M. with a closed fist "a few times" on the face. J. Kilgore was "shocked" when Bean struck F.M. because, at that time, J. Kilgore did not perceive F.M. to be a threat. After Bean punched F.M., F.M. made "impaired sounds" and began rolling around.

Two ambulances arrived, one each to transport F.M. and Bean to the hospital. J. Kilgore saw Bean in the back of one of the ambulances and noticed that Bean's hand was injured. Then-Sheriff's-Deputy Brian Henegar testified that he saw Bean in the back of the ambulance. When Bean held his hand up to Henegar, it looked "red[] and purplish" like it was "bruising." Then-Sheriff's-Deputy Michael Strope similarly noticed Bean's hand was swollen. Dr. Michael Stafford, who treated Bean the night of the F.M. assault, opined that Bean had fractured his fifth

metacarpal—the bone attached to the pinky finger. This injury is commonly known as a "boxer's fracture" because it often results from hitting other people or objects.

Meanwhile, Strope, who rode with F.M. to the hospital, heard F.M. complain that the "left side of his eye was swollen up, and it had blood coming down . . . ." Sheriff's-Deputy Tyler Tinsley, who was present at the hospital, testified that F.M.'s face was "extremely swollen, and it was black and purple, had bruising all over, and his eyes were swollen shut." Dr. Stafford also treated F.M. and diagnosed him with a large hematoma—a blood clot under the skin—on the right side of his face. Dr. Stafford eventually transferred F.M. to another hospital with a neurology department in the event he developed brain bleeding or other problems from his injuries.

The district court found that this evidence supported Bean's conviction on Count I and that Bean's actions caused F.M. bodily injury.

### B.

In addition to the charges related to the assault of F.M., Bean also went to trial on Counts IV and V, arising out of two earlier assaults of C.G., which occurred during C.G.'s arrest on August 10, 2014. On that date, Bean and several other law enforcement officers responded to a call from Officer Matt Kilgore about a potential hit-and-run collision by a driver who was under the influence. C.G. was that driver, and his then-girlfriend, Stacey Jones, was a passenger in his car. After the hit-and-run, C.G.'s car became disabled and was blocking traffic on a road in a state park.

### 1.

*The first assault of C.G.* Tennessee State Parks Ranger Park Greer arrived at the scene and observed M. Kilgore standing outside of his vehicle with his taser in hand pointing toward C.G. Greer did not believe M. Kilgore required assistance subduing C.G., given that C.G. was neither attacking M. Kilgore nor attempting to flee. So Greer proceeded to direct traffic, as M. Kilgore

appeared to have the scene under control. While he did so, Greer looked back toward M. Kilgore and saw that the wires of the taser were on the ground, indicating that M. Kilgore had deployed the taser. M. Kilgore and other officers, who had arrived shortly after Greer, handcuffed C.G. At this point, Greer observed C.G. to be "agitated," "upset," and seemingly intoxicated. After C.G. was handcuffed, Greer believed C.G. "looked under control."

Bean then arrived at the scene in an unmarked or personal vehicle, again with his wife. Greer recalled Bean approaching C.G., who was handcuffed with his hands behind his back, and he saw Bean and C.G. talking to each other. C.G. then made a "derogatory statement" directed at Bean's wife. "Fairly immediately" after C.G. made the statement, Greer observed Bean "hitting [C.G.] in the face" with a closed fist. Greer testified that Bean did not issue any commands before striking C.G. After Bean struck C.G., Greer watched C.G. fall to the ground; at no point did C.G. attempt to flee or pose a significant threat to anyone at the scene. Officers then placed C.G. in the back of a police cruiser.

C.G. also testified about this first assault. C.G. admitted that he had been driving under the influence of alcohol and that, after his car was disabled and he exited his vehicle, he refused law enforcement's commands. C.G. testified that M. Kilgore tased him after he refused to put on handcuffs, but then he pulled the prongs out of his stomach and threw them at M. Kilgore. C.G. stated that, eventually, M. Kilgore and two other officers placed him in handcuffs and walked him toward a police cruiser. While C.G. was standing outside of the cruiser, Bean and his wife arrived. C.G., blaming his intoxication, admitted that he then called Bean's wife a "whore," to which Bean responded, "That's my wife you're talking about," before Bean struck C.G. with a closed fist under the chin. C.G. explained that he never moved toward Bean or any other officers—he merely made the verbal statement toward Mrs. Bean—before Bean punched him. Admittedly, C.G.'s memory

of that day was hazy due to his intoxication, but it was refreshed after he and his then-girlfriend discussed the incident afterward.

2.

*The second assault of C.G.* After M. Kilgore handcuffed C.G. and placed him in a police vehicle, M. Kilgore noticed that C.G. was banging his head against the car window. M. Kilgore opened the window, and C.G. began loudly yelling and cussing. M. Kilgore was concerned that passersby would hear C.G. cussing, so he pepper-sprayed C.G., despite C.G.'s being handcuffed and locked in the police cruiser. According to M. Kilgore, Bean approached C.G. while he was inside the police cruiser with his head hanging out the window, but M. Kilgore never observed Bean do anything unlawful toward C.G.

Conversely, Brandon King, who was a canine officer for Grundy County at the time of the incident, testified that he witnessed Bean strike C.G. again while his head was hanging out of the police cruiser. When he arrived, King observed law enforcement officers load C.G. into the police cruiser, and although he was not physically resisting, King characterized C.G. as "mouthy." King did not observe M. Kilgore pepper-spray C.G., but he did notice that C.G. was having trouble breathing in the vehicle, which had its windows rolled up, so King suggested that M. Kilgore roll the windows down so C.G. could breathe more easily. Shortly after M. Kilgore rolled the windows down, King testified that C.G. stuck his head out of the window, looked at Mrs. Bean, and asked, "Who is this whore?" According to King, Bean then approached C.G. and stated, "You ain't going to talk to my wife that way," and hit C.G. with a closed fist in the face. King's reaction to Bean's second assault of C.G. was that it was unnecessary, as C.G. was subdued in the back of the vehicle and merely "running his mouth like normal arrestees do."

Jason Reynolds, a Tennessee State Park Ranger, testified similarly to King. Reynolds was one of the last people to arrive at the scene, but when he arrived, he observed Bean "lunging or . . . punching into an open window of the rear of a patrol vehicle." He stated that he watched Bean twice lunge into the vehicle.

Given his lapse in memory and the fact that he was intoxicated during the altercation, C.G. briefly testified only about the circumstances surrounding the second assault, not the assault itself. He recalled being pepper-sprayed, being placed in the back of M. Kilgore's vehicle, and sticking his head out of the vehicle's window to breathe. Otherwise, C.G. did not remember much of the circumstances surrounding the second assault, nor did he testify that Bean punched him a second time. Finally, after they left the scene, C.G. testified about being transported to the jail, where he recalled eventually having a conversation with Bean. C.G. claims that he apologized for the statements he made toward Bean's wife and acknowledged that Bean "chin-checked [him] pretty good."

Based on this testimony, the district court also found Bean guilty of Counts IV and V.

II.

Bean first raises two issues concerning the sufficiency of the evidence supporting his convictions. We review a challenge to the sufficiency of the evidence for a criminal conviction de novo. *United States v. Robinson*, 813 F.3d 251, 255 (6th Cir. 2016). A defendant raising a sufficiency-of-the-evidence challenge on appeal faces a "very heavy burden." *Id.* (citation and internal quotation marks omitted). The defendant must show that, even when viewing "the evidence in the light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bronzino*, 598 F.3d 276, 278 (6th Cir. 2010) (internal quotation marks omitted); *see also United States v.*

*Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992) ("Even when a defendant is convicted after a bench trial, the test is whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding beyond a reasonable doubt that the defendant was guilty.") (internal quotation marks omitted). We "must resolve all conflicts in the testimony in the government's favor and draw every reasonable inference from the evidence in favor of the government." *Bashaw*, 982 F.2d at 171. We may not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [our] judgment for that of the [trier of fact]." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (citation and internal quotation marks omitted) (first alteration in original). Here, Bean's appeal fails to overcome the "very heavy burden" for such claims.

A.

Bean does not dispute that his assault of F.M. violated § 242, but he instead contends the district court erroneously found that he caused F.M. "bodily injury"—that finding raised the statutory-maximum sentence from one to ten years.[1] Although § 242 does not define "bodily injury," we have recognized that:

> [T]he term "bodily injury" is "defined identically in four other provisions of Title 18" as: "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of [a/the] function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary."

---

[1]Bean briefly states that he challenges the district court's finding of "serious bodily injury" "for both conviction and sentencing purposes." While § 242 includes a statutory enhancement for "bodily injury," the Sentencing Guidelines also include a sentencing enhancement for "serious bodily injury," U.S.S.G. § 2A2.2(b)(3)(B). The district court determined that (1) Bean's offenses resulted in "bodily injur[ies]" to F.M. and C.G. and, (2) when calculating Bean's Guideline range, that F.M. suffered a "serious bodily injury." Bean's appellate brief discusses only the "bodily injury" enhancement of § 242. Bean did not include any challenge to his Guidelines calculation in the table of contents nor in the "statement of the issues" section of his appellate brief. Thus, he forfeited any challenge to the calculation of his sentence. *See United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016).

*United States v. Wilson*, 344 F. App'x 134, 142 (6th Cir. 2009) (quoting *United States v. Perkins*, 470 F.3d 150, 161 (4th Cir. 2006)). Therefore, whether the evidence is sufficient for a finding of "bodily injury" turns on whether—when viewed in the light most favorable to the Government— the evidence shows that F.M. "suffered physical injury *or* physical pain." *Id.* It plainly does here.

J. Kilgore testified that after Bean struck F.M. on the left side of his face, F.M. made "impaired sounds" and began to "roll around," indicating that he suffered physical pain. Strope heard F.M. complain that the "left side of his eye was swollen up, and it had blood coming down . . . ." Tinsley testified that F.M.'s face was "extremely swollen, and it was black and purple, had bruising all over, and his eyes were swollen shut." Finally, Dr. Stafford diagnosed F.M. with a large hematoma on the right side of his face.

Moreover, J. Kilgore witnessed Bean punch F.M. And multiple witnesses testified that Bean's hand was injured immediately following the assault, indicating Bean was responsible for F.M.'s pain. Indeed, Dr. Stafford diagnosed Bean with a "boxer's fracture." Though Bean asks us to consider alternative causes for the injuries to his hand as well as for F.M.'s injuries, it is not our job to reweigh the evidence or reevaluate witnesses' credibility. The circumstantial evidence presented at trial could allow a rational trier of fact to determine that F.M. at least suffered physical pain from Bean's assault. Therefore, Bean has failed to meet his "very heavy burden" in showing that the evidence at trial was insufficient for a rational trier of fact to determine that F.M. suffered a bodily injury.

B.

Next, Bean argues that the evidence was insufficient to support his convictions arising out of the assaults of C.G. Bean asserts that his use of force on C.G.—"one strike to the chin"—was

reasonable because C.G. was "yelling, screaming, and resisting" and posing a threat to civilians, and therefore, his conduct was within the bounds of the Fourth Amendment.

The Fourth Amendment protects the right of individuals to be free from the use of unreasonable force during an arrest. U.S. Const. amend. IV; *Shumate v. City of Adrian, Mich.*, 44 F.4th 427, 439 (6th Cir. 2022). The test of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Shumate*, 44 F.4th at 440. Generally, when a suspect is handcuffed, non-threatening, and not attempting to flee, use of force on the suspect is unreasonable. *Burgess v. Fisher*, 735 F.3d 462, 474–75 (6th Cir. 2013).

The evidence presented at trial supports a finding that Bean's use of force on C.G. was unreasonable. As detailed above, Greer, King, and C.G. all testified that Bean punched C.G. for no reason other than verbal provocation. Greer testified that M. Kilgore had C.G. under control; C.G. testified that he was not aggressive; and multiple witnesses testified that Bean struck C.G. while C.G. was handcuffed, contained, and posed no threat. Bean's claim of error here is without merit.

III.

In addition to his sufficiency-of-the-evidence claims, Bean raises two evidentiary challenges on appeal: that the district court erred both in admitting hearsay testimony of C.G. and in not admitting certain extrinsic evidence—namely, video recordings of F.M.

A.

Bean first argues that the district court erred in admitting C.G.'s testimony because it was based on hearsay statements made by his then-girlfriend, Stacey Jones. Because Bean did not contemporaneously object to the admission of this alleged hearsay evidence, we review the admission of this evidence for plain error.[2] *United States v. Collins*, 799 F.3d 554, 575–76 (6th Cir. 2015); *see also United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996) (explaining that the "usual standard of review . . . is superseded when . . . the complaining party failed to object to the evidence in the district court," and in such circumstances, our review is for plain error). "The burden of establishing entitlement to relief for plain error is on the defendant claiming it." *United States v. Ford*, 761 F.3d 641, 655 (6th Cir. 2014) (brackets and internal quotation marks omitted). "To satisfy plain-error review, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *Collins*, 799 F.3d at 576 (internal quotation marks omitted); *see also* Fed. R. Crim. P. 52(b). If the party claiming error establishes these three conditions, we then "exercise [our] discretion to notice a forfeited error, but only if . . . the error seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Johns*, 488 F.3d 690,

---

[2]Although the Government objected to C.G.'s testimony on the basis of hearsay, Bean's attorney failed to contemporaneously object to this testimony. The day after C.G. testified, Bean's attorney purportedly raised a hearsay objection during argument on a motion for judgment of acquittal. During that argument, Bean's attorney stated,

> [I]f it would have been a jury, I would have asked the jury to not consider -- to strike all -- everything with my last question with [C.G.], because [C.G.'s] recollection of what led up to the assault came through his conversations with his girlfriend, which is unreliable and cannot be considered . . . .

Trial Tr., R. 145, PageID 1468. This belated argument regarding the credibility of C.G.'s testimony does not constitute a contemporaneous objection to hearsay.

697 (6th Cir. 2007) (internal quotation marks omitted). For the following reasons, the district court did not plainly err in admitting C.G.'s testimony.

First, any error in admitting C.G.'s testimony was not plain—meaning clear or obvious. *United States v. Olano*, 507 U.S. 725, 734 (1993). Bean complains of C.G.'s admissions that he did not clearly remember much of the events on August 10, 2014, due to his intoxication and that his conversations with Jones later refreshed his memory. But C.G. also testified that he remembered Bean punching him in the face while he was handcuffed. Whether C.G.'s testimony was based on his personal knowledge or on what Jones told him is unclear. Any error in admitting his testimony was, therefore, not plain.

Second, even if the admission of C.G.'s testimony was plain error, its admission affected neither Bean's substantial rights nor the fairness and integrity of the proceedings. In a post-trial order denying Bean's renewed motion for judgment of acquittal or for a new trial, the district court acknowledged that it considered C.G.'s "admission that he did not remember all of the details of his arrest due to his intoxication" in evaluating C.G.'s credibility. Additionally, C.G.'s testimony was hardly unique. Greer, Reynolds, and King all testified that they witnessed Bean strike C.G. during C.G.'s arrest. Given the ample evidence supporting Bean's conviction on Counts IV and V apart from C.G.'s testimony, Bean has failed to demonstrate that, but for the admission of C.G.'s testimony, the outcome of the proceeding would have been different. *See Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016).

B.

For his second evidentiary challenge, Bean contends that the district court erred by denying the admission of extrinsic evidence—namely, two video interviews of F.M.—to impeach F.M.'s credibility based on prior inconsistent statements. During trial, Bean first sought to admit a video

interview of F.M. ("the Sweeton Recording"), which was conducted by Corrections Officer Stephanie Sweeton on August 22, 2019, more than a year and a half after Bean's assault of F.M. The Government objected to admission based on hearsay. Bean argued that it was admissible under Federal Rule of Evidence 807, the residual exception to the rule against hearsay. Finding that the recording was untrustworthy and not the most probative evidence of F.M.'s recollection of the events—given that F.M. was readily available to testify—the district court denied the admission of the Sweeton Recording.

Additionally, under Federal Rules of Evidence 803(5) and 807, Bean attempted to admit another video interrogation of F.M. ("the Custodial Interrogation Recording"), conducted by Bean on August 10, 2018, almost nine months after the assault. Again, the Government raised a hearsay objection, and again, the district court questioned the evidence's trustworthiness—given that the interview took place in the interrogation room at the Grundy County Jail in the presence of the individual who arrested and assaulted F.M.—and denied its admission as substantive evidence. The district court did, however, allow Bean to play the Custodial Interrogation Recording to refresh F.M.'s recollection about the events of December 30, 2017. F.M. testified that, due to a stroke he had suffered between the events in question and trial, he remembered neither the assault nor the interview with Bean, and the recording did not refresh his recollection.

The district court ordered the parties to submit post-trial briefs, addressing, among other topics, the admissibility of the Sweeton Recording and the Custodial Interrogation Recording. The district court then entered an order noting that, although it did not admit the video recordings as substantive evidence, it permitted Bean to play the Custodial Interrogation Recording to refresh F.M.'s recollection, and thus, the court had listened to that recording. The district court concluded that it did not need to resolve the admissibility of the recordings because the Custodial

Interrogation Recording, "regardless of its admissibility, ha[d] no impact on the Court's decision as to whether Tony . . . Bean [is] guilty of the crimes charged." Bean now argues that the two video interviews should have been admitted pursuant to Federal Rules of Evidence 613(b) and 803(5). We take these arguments in turn.

Federal Rule of Evidence 613(b) allows parties to impeach a witness based on extrinsic evidence of prior inconsistent statements. Because Bean failed to raise any argument under this Rule below, we review the denial of the admission of the video interviews under Rule 613(b) for plain error. *United States v. Reed*, 167 F.3d 984, 989 (6th Cir. 1999). The district court did not plainly err in not admitting the two video recordings under Rule 613(b). It appears that Bean incorrectly believes the video recordings were admissible as substantive evidence of F.M.'s pre-stroke recollection of the incident. *See* Appellant Br. at 31–32 ("Due to F.M.'s medical conditions, that crucial evidence [of F.M's recollection of the events] was lost; however, prior recordings that purport to show that F.M. believed that Defendant did not assault him exist and were denied entry into evidence."). Rule 613(b) allows for the admission of prior inconsistent statements for impeachment purposes only, not for substantive evidence. *United States v. Munoz*, 605 F.3d 359, 382 (6th Cir. 2010) ("[The] hearsay testimony could have been used only for the limited purpose of impeaching [the witness] by prior inconsistent statement, not for the truth of the matter asserted . . . ."); *United States v. Letner*, 273 F. App'x 491, 496 (6th Cir. 2008) (citing *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 722 (6th Cir. 2005)) ("Evidence of unsworn prior inconsistent statements by a witness may only be admitted for impeachment purposes . . . .").

Though Bean suggests at times that he would have used the recordings to impeach F.M.'s credibility, he still cannot show that the district court committed plain error. We are not persuaded that F.M.'s prior statements in the recordings are indeed inconsistent with his trial testimony as

Rule 613(b) requires. And regardless, the exclusion of the recordings did not affect Bean's substantial rights. The district court explained that the recordings had "no impact" on its verdict, which forecloses the possibility that the recordings would have affected the outcome of the district court proceedings. *See Molina-Martinez*, 578 U.S. at 194.

Next, Bean argues that the two video interviews should have been admitted as substantive evidence under Rule 803(5)'s hearsay exception for recorded recollections. That rule allows a record to be read into evidence if it "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). Importantly, "[t]he touchstone for admission of evidence as an exception to the hearsay rule has been the existence of circumstances which attest to its trustworthiness." *United States v. Williams*, 571 F.2d 344, 350 (6th Cir. 1978). Because Bean attempted to admit the video recordings under Rule 803(5), the parties agree that we review the district court's legal conclusions de novo and the factual determinations underpinning those conclusions for clear error. *See Reed*, 167 F.3d at 987.

The district court properly excluded both video recordings because neither was made when "the matter was fresh in the witness's memory," Fed. R. Evid. 803(5)(B), nor did the video recordings contain "sufficient indicia of trustworthiness," *United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir. 1993). Both recordings were nine months to over a year-and-a-half stale, and they had significant reliability concerns—especially the Custodial Interrogation Recording, which Bean himself created. And in any event, the district court expressly stated that the video recordings had "no impact" on the court's verdict.

For these reasons, the district court did not err in refusing to admit the two recorded interviews of F.M. under either Federal Rules of Evidence 613(b) or 803(5).

VI.

We affirm the judgment of the district court.